Godfrey ARTHUR, Plaintiff-Appellee,

v.

FLOTA MERCANTE GRAN CENTRO AMERICANA S.A., Defendant-Third Party, Plaintiff-Appellant,

National Cargo Bureau, Inc., Third Party Defendant-Appellee.

No. 72-2597.

United States Court of Appeals, Fifth Circuit.

Nov. 27, 1973.

Rehearing and Rehearing En Banc Denied Jan. 2, 1974.

Clarence A. Frost, New Orleans, La., for plaintiff-appellant.

Clifton S. Carl, Gordon F. Wilson, Jr., New Orleans, La., for plaintiff-appellee.

Before BELL, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

This controversy arises out of an accident that occurred when plaintiff Godfrey Arthur, an employee of National Cargo Bureau, Inc., boarded the M/V QUETZALTENANGO, a vessel owned by the defendant Flota Mercante Gran Central Americana S.A., in order to inspect the vessel for grain loading. While

the ship was docked at New Orleans, the Mississippi River reached a particularly low level and consequently the traditional gangway could not be used for boarding. Instead a brow gangway was placed on the wharf in such a manner that one end extended over the vessel's after bulwark railing. From this brow gangway a short bulwark ladder consisting of four or five steps was connected to the bulwark with the base of the ladder resting on the ship's deck. Because the bulwark ladder was too short, the ladder's steps were not parallel with the ship's deck, but slanted downward towards the deck and away from the bulwark. Although the brow gangway was equipped with hand rails, the bulwark ladder was not so equipped. Also, where the brow gangway intersected with the bulwark ladder, there was an overhang, called a fishplate, extending from the vessel over the bulwark railing that created a limited opening through which the ship was boarded. As this opening was approximately four feet in height, it was necessary to stoop or lean to go through this opening and then step down on the bulwark ladder.

On June 20, 1969, plaintiff Arthur boarded the vessel to inspect the holds for grain loading. When plaintiff crossed the brow gangway, he stepped down on the bulwark ladder, one foot slipped and he fell striking his coccyx on a ladder step.

Arthur subsequently filed suit against defendant Flota Mercante alleging both negligence and unseaworthiness, and Flota Mercante filed a third party claim against Arthur's employer, National Cargo Bureau, for indemnity. At trial the court dismissed the unseaworthiness claim because plaintiff was not performing services normally done by a seaman;[1] Flota Mercante's third party claim for indemnity was also dismissed. The case was tried on the negligence issue, and the jury returned a verdict in favor of plaintiff for $25,000. In an-

swer to special interrogatories, the jury found plaintiff ten percent contributorily negligent. The award was reduced accordingly, and judgment was entered for plaintiff in the amount of $22,500. Flota Mercante appeals, urging that it fulfilled its duty of care owed to the plaintiff, that the trial court improperly instructed the jury that a violation of the Safety and Health Regulations was negligence per se, that the court improperly dismissed its third party claim for indemnity, and that the damages were excessive. We find no merit in these contentions and therefore Affirm.

The first question is whether the defendant fulfilled its duty of care owed to the plaintiff. While it is well established that a shipowner owes a duty to provide invitees boarding or leaving the vessel with a reasonably safe means of access, Tullis v. Fidelity & Casualty Co., 397 F.2d 22, 24 (5th Cir., 1968), defendant contends that it satisfied this duty. Because negligence is measured against the surrounding circumstances, Flota Mercante urges that the particularly low level of the Mississippi River justified its using this means of access. Indeed, Flota urges that under these circumstances this was the only method of access available.

■ A review of the record indicates ample evidence to support the jury's finding that the defendant breached its duty of care and was therefore negligent. Testimony introduced at trial demonstrated that the method of access provided could have been modified so as to furnish a safer means of ingress or egress. Or an entirely different type of access, such as extending a shore gangway from the dock to the ship's weather deck, could have been substituted. In short, the evidence supports the jury's conclusion that the combination of the brow gangway and the bulwark ladder was not the only means of access that could have been furnished under these

1. Because of the way in which we dispose of this case, it is unnecessary for us to decide whether the plaintiff, an employee of Na- tional Cargo Bureau who inspects and certi- fies vessels for loadng grain, is a "seaman."

circumstances, and that the defendant breached its duty of care.

Also in regard to duty of care, defendant argues that it owed no duty to protect the plaintiff from the risk of harm created by the dangerous condition of the vessel because plaintiff, as an experienced seaman, knew or should have known of the dangerous condition. The trial court properly considered this contention as relating to plaintiff's negligence in boarding the vessel in the condition in which it existed. Comparative negligence is the rule to be followed; the negligence of the plaintiff, regardless of how gross, does not preclude recovery, but only mitigates damages. Movible Offshore Co. v. Ousley, 346 F.2d 870, 873 (5th Cir., 1965). The jury found Arthur ten percent negligent, and the court reduced the plaintiff's award of damages accordingly.

The next issue is whether the court erred in instructing the jury that a violation of the Safety and Health Regulations is neglience per se. The regulations provide:

> "When the upper end of the means of access rests on or is flush with the top of the bulwark, substantial steps, properly secured and equipped with at least one substantial hand rail approximately 33 inches in height shall be provided between the top of the bulwark and the deck."

29 C.F.R. § 1504.21(f). In accordance with this regulation, the trial court instructed the jury that, when such a ladder arrangement is employed, the steps must be secured and equipped with one substantial handrail. If this statutory duty is not fulfilled, the shipowner is negligent as a matter of law. Defendant contends that this instruction confused the jury in that it conflicted with another charge delineating contributory negligence. More importantly, defendant contends that this regulation applies only where the plaintiff's claim is for unseaworthiness because the instruction imposes too high a standard of care

where the only basis of recovery is negligence. We do not agree.

This court was first confronted with the application of safety regulations as a standard for determining negligence in Marshall v. Isthmian Lines, Inc., 334 F.2d 131 (5th Cir., 1964). In *Marshall* there was a violation of the Coast Guard Regulations relating to the shipment of hazardous articles. Judge Brown, speaking for the court, stated:

> "The law is well established that violation of a statute which is intended to protect the class of persons to which a plaintiff belongs against the risk of the type of harm which has in fact occurred is negligence in itself. Inherent in this statement of the legal principle are three questions which must be resolved before liability could be imposed in this case on a negligence *per se* theory. What proof makes out a violation of the regulations? Were the regulations designed to protect longshoremen? Were they intended to protect against the risk of the kind of harm that occurred here . . . ."

*Id.* at 134 (citations omitted); *see* Phipps v. S.S. Santa Maria, 418 F.2d 615 (5th Cir., 1971); Manning v. M/V Sea Road, 417 F.2d 603 (5th Cir., 1969); Grigsby v. Coastal Marine Serv. Inc., 412 F.2d 1011 (5th Cir., 1969); Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir., 1968); Provenza v. American Export Lines, Inc., 324 F.2d 660 (4th Cir., 1963); Simmons v. Gulf and South American S.S. Co., 260 F. Supp. 525 (E.D.La., 1966), aff'd, 394 F. 2d 504 (5th Cir., 1968); Bue, Admiralty Law in the Fifth Circuit—A Compendium for Practitioners I, 4 Houston L. Rev. 347, 404 (1966). The litigants cite us to no case, and our independent research reveals none, in which the regulations were applied when the sole basis for recovery was negligence. Moreover, in the cases dealing with both unseaworthiness and negligence, the courts have failed to say that the regulations apply to one theory of recovery, but not the other. *E. g.,* Manning v. M/V Sea

Road, *supra*, 417 F.2d at 611–612; Provenza v. American Export Lines, Inc., *supra*, 324 F.2d at 665. Significantly, the purpose of these regulations are to promote safety in the industry and establish an unambiguous standard for measuring industrial safety as it relates to longshoremen, harbor workers or other business invitees that come into contact with a vessel. That purpose is advanced when the court instructs the jury as it did in this case. We hold that if the *Marshall* criteria are met, the court may instruct the jury that a violation of the Safety and Health Regulations is negligence per se.

We turn then to these requirements. First, there was clearly sufficient proof to establish a violation of the regulations. The regulations specifically require that, when a means of ingress or egress is of the type involved in this case, the steps must be secured and equipped with one substantial handrail. It is undisputed that the bulwark ladder did not have a handrail of any type and that the steps were not secured so that they would be parallel with the ship's deck.

Second, it is clear that the regulations were designed to protect plaintiff, a surveyor employed by National Cargo Bureau. The inspection and certification of vessels by a National Cargo Bureau surveyor is a prerequisite to the loading of grain, and the vessel must be recertified when it is ready to sail. This activity is classified by the Department of Labor as employment related to longshoring, ship repairing and ship building, and therefore falls within the scope of the regulations. 33 U.S.C.A. § 902(3).

■ Third, the regulations were designed to protect against the type of risk created in this case. Undoubtedly, the regulations requirements that the steps be properly secured and that the gangway be furnished with a handrail were intended to provide safe access for persons boarding or leaving the vessel, and to prevent accidents like the one involved in this lawsuit. Therefore, because the three criteria necessary to establish negligence as a matter of law have been met, we hold that the trial court did not err in instructing the jury that if they find the regulation was violated, then such a violation is regarded in law as negligence per se. The court went on to instruct the jury that before they may find for the plaintiff, such violation of the regulation must be shown by a preponderance of the evidence to have been the proximate cause of the plaintiff's injury.

■ The third issue is whether the trial court erred in dismissing Flota Mercante's claim against National Cargo Bureau for indemnity. Flota first relies on Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and contends that the indemnity rule enunciated there is applicable in this case. Alternately, Flota Mercante urges that, even if the *Ryan* doctrine does not apply, National Cargo was contractually obligated to supply the defendant with competent personnel to inspect the vessel. Flota reasons that National Cargo warranted that its employee would inspect the vessel in a workmanlike manner, that the warranty was breached when plaintiff negligently contributed to his own injury, and that indemnity therefore follows.

It is unnecessary to decide whether the *Ryan* doctrine applies because the facts of this case simply do not support Flota Mercante's claim for indemnity. The responsibility for providing safe access was solely that of the shipowner, not the responsibility of the employees of National Cargo. There is no evidence showing that National Cargo's employees contributed in any way to the creation of the dangerous condition. The shipowner did not fulfill its duty to furnish safe access, and it is responsible for its own negligence. Flota's claim that it is entitled to indemnity from National Cargo for its own negligence is meritless.

■ Finally, Flota Mercante contends that the award of damages was exces-

sive, and therefore the trial court abused its discretion in not granting a new trial or ordering a remittitur. The jury heard testimony from three doctors who described the plaintiff's injury as coccydynia, a painful condition of the coccyx. Additionally, there was testimony telling of the painful inconveniences that must be endured by the plaintiff in the future and that had been endured by him for the past three years. We believe the jury's award of damages is supported by the evidence.

The judgment of the district court is affirmed.