[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13602
_____

D.C. Docket No. 1:16-cv-20829-JEM

ELAINE CARROLL,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 15, 2020)

Before JORDAN, JILL PRYOR, and WALKER,* Circuit Judges.

JORDAN, Circuit Judge:

_____

* The Honorable John M. Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Elaine Carroll tripped over the leg of a lounge chair while she was walking through a narrow pathway on a Carnival cruise ship. She sued Carnival, alleging that it negligently failed to maintain a safe walkway and failed to warn her of that dangerous condition. The district court granted summary judgment in favor of Carnival on both claims, concluding that the condition was open and obvious and that Carnival lacked actual or constructive notice of the hazard.

After review of the record and the parties' briefs, and with the benefit of oral argument, we reverse. In concluding that the condition was open and obvious and that Carnival lacked notice, the district court failed to draw all factual inferences in favor of Mrs. Carroll. In addition, even if the allegedly dangerous condition were open and obvious, that would only defeat the failure to warn claim, and would not bar the claim for negligently failing to maintain a safe walkway.

**I**

In March of 2015, Mrs. Carroll and her husband Michael were passengers on board the *Carnival Pride*. On the first full day of the cruise, Mrs. and Mr. Carroll were walking to one of the restaurants, David's Steakhouse, on Deck 11 of the ship. The outer glass wall of David's Steakhouse is curved in the shape of a semi-circle. Lounge chairs are set up in a semi-circular shape along the curved glass wall of the restaurant.

To get to the restaurant, the Carrolls had to walk on a curved walkway between the foot-end of the row of lounge chairs (on their right side) and the ship's railing (on their left side). When they initially approached the walkway, there were approximately two to three feet between the chairs and the railing, so they were able to walk side-by-side. At some point after passing the first chair, however, the distance between the chairs and the railway narrowed, so Mrs. Carroll's husband walked in front of her and she followed behind him. While Mrs. Carroll was walking behind her husband, her right foot clipped the leg of one of the lounge chairs, causing her to fall and suffer injuries.

Mrs. Carroll sued Carnival for negligence. She asserted, among other things, that Carnival negligently maintained a dangerous condition—"lounge chairs that narrowed and protruded onto a pedestrian walkway"—and negligently failed to warn passengers of the danger associated with that condition.

Carnival moved for summary judgment, arguing that the lounge chairs did not constitute a dangerous condition, and even if they did, it had no duty to warn of the condition for two reasons. First, the condition was open and obvious. Second, Carnival lacked notice of the hazard. Mrs. Carroll opposed the motion, responding that although the lounge chair that she tripped on was not hazardous in and of itself, the location of the lounge chairs and the manner in which they were arranged constituted a dangerous condition. She also argued that the condition was not open

3

and obvious because, due to the layout of the lounge chairs and the narrowness of the path, she was forced walk behind her husband, obstructing her view. And she asserted that she did not need to prove that Carnival had notice of the hazard because it created the unsafe condition.

Both parties presented evidence in support of their positions, including the deposition testimony of Mrs. and Mr. Carroll and several Carnival employees. Mrs. Carroll also presented the affidavit of an expert, Randall Jaques, who opined that the walkway was unsafe and fell below industry standards.

The district court granted summary judgment in favor of Carnival. In doing so, the district court concluded that Carnival had no duty to warn Mrs. Carroll of the allegedly dangerous condition because it was open and obvious. The district court stated that, because the condition was open and obvious, it did not need to reach whether Carnival had actual or constructive notice of the risk-creating condition. It nevertheless also concluded that Carnival lacked notice of the danger.

## II

We review a district court's grant of summary judgment *de novo*. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). "Generally speaking, we will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sorrels v. NCL (Bahamas)*

*Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) (citation and internal quotation marks omitted).

## III

This action is governed by federal maritime law because Mrs. Carroll's injury occurred on a ship sailing in navigable waters. *See Guevara*, 920 F.3d at 720. "In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). To prevail on her maritime negligence claims, therefore, Mrs. Carroll had to prove that (1) Carnival had a duty to protect her from a particular injury; (2) Carnival breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm. *See Sorrels*, 796 F.3d at 1280.

With respect to the duty element, a cruise line like Carnival owes its passengers "a 'duty of reasonable care' under the circumstances." *Id.* at 1279. This requires, as "a prerequisite to imposing liability," that Carnival "have had actual or constructive notice of the risk-creating condition[.]" *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Thus, Carnival's liability "hinges on whether it knew or should have known" of the dangerous condition. *Id.*

We begin by analyzing Mrs. Carroll's claim that Carnival negligently failed to warn her of a dangerous condition, and then evaluate her claim that Carnival negligently failed to maintain a safe walkway.

**A**

**1**

"An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Guevara*, 920 F.3d at 720 n.5. In evaluating whether a danger is "open and obvious" we are guided—as in general tort law—by the "reasonable person" standard. *Cf. Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189–90 (11th Cir. 1993) (explaining in the products liability context that whether a danger is open and obvious is determined "on the basis of an objective view of the product, and the subjective perceptions of the . . . injured party are irrelevant") (citations omitted); *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019) (explaining in the premises liability context that "[w]hether a hazardous condition is open and obvious is an objective inquiry"). The question, therefore, is whether a reasonable person would have observed the chair leg and appreciated the risk of walking through the narrow passageway under the circumstances.[1]

---

[1] We have repeatedly acknowledged and applied this reasonable person standard in unpublished maritime decisions. *See, e.g., Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (explaining that an operator of a cruise ship has no duty to warn of dangers that are open and obvious and that whether a danger is open and obvious is based on a "reasonable person" standard); *Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) ("A cruise line does

The district court concluded that Carnival had no duty to warn Mrs. Carroll of the dangers associated with the walkway because the "placement of deck chairs on an open deck, on a clear and sunny day, was an open and obvious condition." D.E. 84 at 10. In reaching this decision, the district court relied on Mrs. Carroll's deposition testimony that she could have seen the chair leg had she looked down. *See id*. at 9. The district court also relied on Mrs. Carroll's testimony "that she did not walk behind her husband because the area narrowed, as her husband explained, but rather, because 'you do that.'" *See id*. at 2.

But there was also evidence in the record—which the district court did not acknowledge—that Mrs. Carroll was *forced* to walk behind her husband after passing the first lounge chair because the walkway narrowed. Mrs. Carroll testified that, as a result, her view was blocked by her husband, who has a large profile, so she could not see the foot of the lounge chair that she tripped on nor around the curve of the walkway.

In our view, the district court erred by crediting some statements by Mrs. Carroll—which favored Carnival's open and obvious argument—over her other

---

not need to warn passengers or make special arrangements for open-and-obvious risks. . . . In determining whether a risk is open and obvious, we focus on 'what an objectively reasonable person would observe and do[ ] not take into account the plaintiff's subjective perceptions.'") (internal quotation marks and citations omitted); *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) ("Under federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious. . . . We evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective.").

7

statements that she was forced to follow behind her husband due the layout of the chairs and the narrowness of the walkway. Viewing the facts in the light most favorable to Mrs. Carroll, as we must, the record supports an inference that a reasonable person in Mrs. Carroll's circumstances would not have observed the chair leg obstructing her path. There is a genuine dispute of material fact as to whether the danger associated with the walkway was open and obvious.

## 2

After concluding that Carnival had no duty to warn Mrs. Carroll because the allegedly dangerous condition was open and obvious, the district court stated that it need not decide whether Carnival had actual or constructive notice of the condition. It nevertheless determined that Carnival lacked such notice. In reaching this conclusion, the district court again failed to view the evidence in the light most favorable to Mrs. Carroll and overlooked evidence in the record from which a reasonable jury could find that Carnival had notice.[2]

---

[2] Mrs. Carroll contends that evidence of notice should not be required if the owner of the cruise ship created the dangerous condition. She urges us to modify or reject our decision in *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358–59 (11th Cir. 1990), which held that the district court's jury instructions were erroneous because they did not require the plaintiff to prove notice if she established that the cruise line created the dangerous condition. As a panel, we are bound by *Everett* even if we had misgivings about it. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."). In any event, we need not address *Everett* because, as explained in the text, Mrs. Carroll presented sufficient evidence to create a genuine dispute of material fact on notice.

Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition. *See Guevara*, 920 F.3d at 720–22 (holding that a warning sign alerting passengers to "watch [their] step" was sufficient to create an issue of material fact on whether the cruise ship had notice of the dangerous nature of the step down); *Sorrels*, 796 F.3d at 1288 (holding that a ship employee's testimony that the ship would sometimes post a warning sign on the pool deck after it rained was enough to create an issue of material fact on whether there was notice that the deck could be slippery when wet). Here, there is evidence reflecting that Carnival took corrective measures to prevent people from tripping over the lounge chairs in the walkway on Deck 11.

For example, Mrs. Carroll presented evidence, including the testimony of one of Carnival's employees, that if the lounge chairs were arranged in the "lay-flat position," rather than upright, they would protrude further into the walkway—making the walkway even narrower. As a result, Carnival required them to be set up in the upright position, and employees regularly patrolled the area to fix the chairs. *See* D.E. 49 at ¶¶ 12–13, 32–36.

Specifically, one of Carnival's pool deck supervisors, Viktor Symotiuk, testified that the lounge chairs on Deck 11 were supposed to be arranged in the upright position, and he was instructed (and trained other employees that he supervised) to make sure that the chairs were not protruding into or blocking the

walkway. *See* D.E. 49 at ¶ 12; D.E. 48-5 at 30, 36–38. Although he testified that a lounge chair may be used in the lay-flat position if it is occupied, he also stated that "[y]ou never leave the chair unattended and flat in that area." D.E. 48-5 at 33. He further acknowledged that "[i]f the lounge chair is set on the passenger walkway, it would be an obstruction[ ], it's a reason why a person can get injured." *Id*. at 64.

The district court relied on the deposition of another pool deck supervisor, Denys Stavyts'ky, who testified that that the chairs could be set up in either the upright or lay-flat position. *See* D.E. 84 at 12. But the conflict in the testimony of Mr. Symotiuk and Mr. Stavyts'ky demonstrates that there is a dispute of material fact, making summary judgment inappropriate.[3]

In addition to the testimony of Mr. Symotiuk, there was also the testimony of a Carnival security officer, Manolyn Saldo. She testified that part of her duties included patrolling Deck 11 and moving any lounge chairs that were blocking the walkway. *See* D.E. 44 at ¶¶ 39–41. The assistant chief security officer, Siddhartha Kokate, likewise testified that because passengers sometimes pull out chairs and do not put them back in place, they can create an "unsafe condition," so it is part of the staff's duties to take corrective action and remove that hazard. *See* D.E. 44-6 at 14; D.E. 44 ¶¶ 45–47.

---

[3] We note that Mr. Stavyts'ky also testified that hotel stewards were required to inspect that the chairs were arranged properly every 15-20 minutes. *See* D.E. 44-3 at 45–46.

10

As in *Guevara* and *Sorrels*, a reasonable jury could view this testimony as evidence that Carnival has taken corrective measures—i.e., adopting a policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway—due to a known danger. This is enough to withstand summary judgment on the issue of Carnival's notice.

In sum, there were disputes of fact on both the obviousness of the condition and Carnival's notice of the danger. The district court therefore erred in granting summary judgment on Mrs. Carroll's failure to warn claim.[4]

**B**

The district court appears to have concluded that Carnival was entitled to summary judgment on both Mrs. Carroll's failure to warn and negligent maintenance theories because of the open and obvious nature of the condition. The district court reasoned that it need not reach notice after determining that the condition was open and obvious, suggesting that its decision on the latter was dispositive of the entire case. That initial conclusion, however, should not have ended the analysis for Mrs. Carroll's negligent maintenance claim. As Mrs. Carroll correctly argues, Carnival

---

[4] Mrs. Carroll also asserts that Carnival had notice of the dangerous condition because there were 12 separate instances where passengers tripped and fell over lounge chairs aboard ships in the same class as the *Carnival Pride*. The parties dispute whether these prior incidents were sufficiently similar to Mrs. Carroll's accident to put Carnival on notice of the risks associated with the walkway on Deck 11 of the *Carnival Pride*. We do not reach this issue because, as discussed above, there is other evidence in the record establishing that there is a genuine dispute of material fact as to whether Carnival had notice of the dangerous condition.

11

may still be liable for maintaining a dangerous condition even if the danger was obvious.

**1**

As noted earlier, this action is governed by federal maritime law. *See Guevara*, 920 F.3d at 720. "Subject to direction from Congress, the federal courts fashion federal maritime law." *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 992 (2019). In doing so, we "may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writing." *Id. See also E. River S.S. Corp. v. Transamerica*, 476 U.S. 858, 864–65 (1986) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.") (footnote omitted); *Franza v. Royal Caribbean Cruises, Ltd.*, 722 F.3d 1225, 1231–32 (11th Cir. 2014) (discussing our "broad discretion in admiralty and maritime" cases to "develop th[e] law").

The open and obvious nature of a dangerous condition negates liability for failure to warn. *See, e.g.*, *Guevara*, 920 F.3d at 720 n.5 (noting that the duty to warn only applies to "dangers that are not open and obvious"); Benedict on Admiralty § 5.04 (7th ed. 2019) (stating that the duty of cruise lines to give notice of defective conditions "extends only to those dangers which are not apparent or obvious"); Thomas J. Schoenbaum, Admiralty & Maritime Law § 5:11 (6th ed. 2018) ("[T]here

12

is a duty to warn passengers only of dangers that are not apparent and obvious.").

We have not squarely addressed, however, whether the open and obvious nature of

a dangerous condition also bars liability for a maritime negligent maintenance claim.

Because Congress has not spoken on this issue, "[w]e start with basic tort-law

principles" to determine whether such a distinction exists (or should exist) in

maritime law. *Air & Liquid Sys. Corp.*, 139 S. Ct. at 993.

The Third Restatement of Torts imposes a duty of reasonable care on

possessors of land—even if a danger is open and obvious—if the possessor should

anticipate harm. *See* Restatement (Third) of Torts § 51 cmt. k (2012). It notes that

that such a duty is consistent with § 343A(1) of the Second Restatement of Torts,

which requires land possessors to take reasonable precautions for known or obvious

dangers when the possessor "should anticipate the harm despite such knowledge or

obviousness." Restatement (Second) of Torts § 343A(1) (1965). As relevant here,

the Second Restatement of Torts illustrates this principle with the following

example:

> Through the negligence of A Grocery Store a fallen rainspout is
> permitted to lie across a footpath alongside the store, which is used by
> customers as an exit. B, a customer, leaves the store with her arms full
> of bundles which obstruct her vision, and does not see the spout. She
> trips over it, and is injured. If it is found that A should reasonably have
> anticipated this, A is subject to liability to B.

Restatement (Second) of Torts § 343A cmt. f, illus. 4.

13

The Third Restatement of Torts distinguishes between failure to warn claims and negligent maintenance claims, explaining that the open and obvious nature of a risk negates the duty to warn because "[t]he primary purpose of a warning is to give notice of the existence of the risk. . . . Risks that are known, open, or obvious already provide notice to those who might be exposed to the risk, making a warning superfluous." Restatement (Third) of Torts § 51 cmt. k. By contrast, the open and obvious nature of a risk does not render the duty to exercise reasonable care superfluous:

> Known or obvious dangers pose less of a risk than comparable latent dangers because those exposed can take precautions to protect themselves. Nevertheless, despite the opportunity of entrants to avoid an open and obvious risk, in some circumstances, a residual risk will remain. Land possessors have a duty of reasonable care with regard to those residual risks. Thus, the fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, *but it does not pretermit the land possessor's liability*.

*Id.* (emphasis added).

Thus, the Third Restatement of Torts treats the open and obvious nature of a dangerous condition as a factor to be considered in a comparative fault analysis—not as a bar to liability for negligently maintaining premises. *See id.* ("An entrant who encounters an obviously dangerous condition and who fails to exercise reasonable self-protective care is contributorily negligent. Because of comparative fault, however, the issue of the defendant's duty and breach must be kept distinct

14

from the question of the plaintiff's negligence."). As the Third Restatement of Torts notes, a contrary rule that would preclude liability because a risk is open and obvious would "sit[ ] more comfortably—if not entirely congruently—with the older rule of contributory negligence as a bar to recovery." *Id.*

We think the approach of the Third Restatement of Torts is consistent with maritime tort principles, and we adopt it. For starters, it aligns with the Supreme Court's adoption of comparative negligence in maritime cases. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628–29 (1959) (holding that because maritime law governed the plaintiff's negligence claim, the district court erred "in instructing the jury that contributory negligence . . . would operate as a complete bar to recovery," and that "[t]he jury should have been told instead that [the plaintiff's] contributory negligence was to be considered only in mitigation of damages"); *Smith & Kelly Co. v. S/S Concordia TADJ*, 718 F.2d 1022, 1029–30 (11th Cir. 1983) (applying comparative fault principles in a maritime case).

The approach of the Third Restatement of Torts is also dictated by the former Fifth Circuit's opinion in *Arthur v. Flota Mercante Gran Centro Americana S.A.*, 487 F.2d 561 (5th Cir. 1973). In *Arthur*, the plaintiff set out to board the defendant's vessel to inspect the loading of grain. *See id.* at 562. To board the ship, he had to cross a brow gangway and step down a bulwark ladder. *See id.* As he stepped down on the ladder, he slipped and fell, causing injury. *See id.* The case proceeded to trial

15

solely on the plaintiff's negligence claim against the shipowner. *See id.* After a jury verdict in the plaintiff's favor, the defendant appealed, arguing in pertinent part that "it owed no duty to protect the plaintiff from the risk of harm created by the dangerous condition of the vessel because [the] plaintiff, as an experienced seaman [an inspector], knew or should have known of the dangerous condition." *Id*. at 563. The *Arthur* panel rejected this argument, explaining that "[t]he trial court properly considered this contention as relating to plaintiff's negligence in boarding the vessel in the condition in which it existed.  Comparative negligence is the rule to be followed; the negligence of the plaintiff, regardless of how gross, does not preclude recovery, but only mitigates damages." *Id.* Though *Arthur* is not often cited for this principle, it constitutes binding precedent and demonstrates that the open and obvious nature of a dangerous condition does not bar a claim against a shipowner for negligent failure to maintain safe premises.[5]

---

[5] It is unclear from *Arthur* whether the plaintiff was covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*.  But even if the plaintiff would have been covered by the LHWCA, *Arthur* is still controlling because the plaintiff's claims arose prior to the enactment of the 1972 Amendments to the LHWCA, which added § 905(b), a statutory negligence action against the ship. *See Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165 (1981).  Prior to 1972, a longshoreman injured in the course of his employment could receive compensation from the shipowner if he could prove that his injury was caused by the shipowner's negligence or the ship's unseaworthiness. *See id.* at 164; *Clark v. Bothelho Shipping Corp.*, 784 F.2d 1563, 1564–65 (11th Cir. 1986).  *Arthur* was decided on negligence grounds and involved— as here—the duty a shipowner owes to an invitee.

16

Accordingly, even if the risk was open and obvious, that does not preclude Mrs. Carroll's negligent maintenance claim. *See Lewis v. Langenfelder & Son*, No. 2:01cv804 & 2:02cv622, 2004 WL 2996780, at *6 (E.D. Va. Aug. 17, 2004) ("If the nature of the gap between the vessel and the shore was a dangerous condition, it was created by the defendant through its employees, and the defendant had a duty to correct this condition, regardless of whether it was open and obvious. The decedent's decision to proceed despite this condition may have been contributorily negligent, but this conclusion is not a per se bar to recovery under the law of admiralty.").

**2**

Mrs. Carroll presented evidence creating a genuine dispute of material fact as to whether Carnival negligently maintained an unsafe walkway. This included an affidavit from her expert, Mr. Jaques, who opined that the width of the walkway would have been below industry standards if the chairs were in the lay flat position. This testimony is relevant in determining whether Carnival's conduct fell below the standard of care. *See, e.g.*, *Sorrels*, 796 F.3d at 1282 ("[E]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence . . . Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care.") (citation and internal quotation marks omitted).

17

According to Mr. Jaques, the maximum amount of room possible in the walkway was 35–36 inches if the lounge chairs were in the upright position and pushed up against the glass wall of David's Steakhouse. If the lounge chairs were in the lay-flat position, however, the width of the walkway would be 28 ½ inches if the chairs were only two inches from the glass, and between 23 and 25 inches if the chairs were approximately six inches from the glass. If some of the chairs were in the lay flat position or pulled out a few inches, Mr. Jaques opined that the walkway would violate industry standards, including but not limited to the ADA standards, which require "a clear width of not less than 36 inches[.]" D.E. 49 at 37.

The record further reflects that there are disputes of material fact regarding whether the chairs were in the upright or lay-flat position at the time of the accident, and whether the chairs were in line or out of position. For example, both Mrs. and Mr. Carroll testified in their depositions that at least some of the deck chairs were in the lay flat position. Mrs. Carroll also testified, however, that at the time of the accident the chairs "weren't messed up." D.E. 48-1 at 41. In contrast, Mr. Carroll testified that the chairs were not "orderly," explaining that three or four of the chairs were "out of position" and "were pulled back from the glass several feet[.]" D.E. 48-3 at 25. He explained that the chairs "were in the walkway," which he described as being "more like an obstacle course," and estimated that the width of the walkway was about 20 inches. *See id.* at 25, 29.

18

A reasonable jury could find that at least some chairs were in the lay-flat position and out of order, and thus conclude—in conjunction with Mr. Jaques' testimony—that Carnival negligently maintained an unsafe walkway that fell below industry standards. The district court therefore erred in granting summary judgment on Mrs. Carroll's negligent maintenance claim.

## IV

We reverse the district court's grant of summary judgment in favor of Carnival and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**