[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 18-14917 & 19-10888
_____

D.C. Docket No. 1:18-cv-20324-UU

ELIZABETH AMY,
individually and as parent, natural guardian,
and next friend of W.A., a minor,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a Panama corporation doing business as Carnival Cruise Lines,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 16, 2020)

Before WILSON, MARCUS, and THAPAR,[*] Circuit Judges.

WILSON, Circuit Judge:

This maritime-negligence case arises out of an accident that occurred at sea on Carnival's cruise ship *Liberty*. While on Deck 14 with her family, W.A., a three-year-old female child, climbed and—accounts differ—either fell over or through a guard rail onto Deck 12 and suffered head injuries. W.A.'s mother, Elizabeth Amy, sued Carnival on W.A.'s behalf for negligent creation and maintenance of the guard rail and failure to warn of the danger posed by the guard rail.[1] The district court granted summary judgment on both counts to Carnival. Amy appeals, arguing that the district court erred as to both counts. We agree with Amy. The district court erred, first, when it concluded that there was no genuine issue of material fact as to Carnival's notice of the alleged risk-creating condition because it failed to view the evidence in a light most favorable to Amy and to draw reasonable inferences in her favor. It also erred when it resolved the failure-to-warn claim on a basis that Carnival did not raise, without providing Amy notice or

---

[*] Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] Amy made a third, catch-all negligence allegation. But the district court declined to analyze that third count due to lack of record evidence about any other allegedly unsafe conditions, and Amy does not argue about it on appeal. So we do not address it further.

an opportunity to respond.  Therefore, we reverse the district court's grant of summary judgment and remand for further proceedings.[2]

## I.

To set the scene, the *Liberty* has a Deck 12 and a Deck 14, but no Deck 13. Deck 14 overhangs Deck 12.  Deck 14 has a guard rail, which is composed of a series of horizontal metal and wooden bars called courses.  The courses are 7.87 inches apart.  W.A. fell from Deck 14 onto Deck 12.

Witnesses told different stories about how W.A. fell.  W.A.'s brother, who was standing on Deck 14 with her, testified that W.A. put her hands on the second course, tried to pull herself up and sit on the lower course, lost her grip, and slipped through the courses.  But two brothers (minors unrelated to the Amy family), who were waiting to go down a waterslide at the time W.A. fell, said in separate depositions that W.A. had climbed the courses; was standing on the second course from the bottom; had her hands on the wooden, top course; leaned over it; and fell over the top of the guard rail.

Amy sued Carnival and alleged the following in her complaint.  The guard rail posed a risk of falling and resulting injury to children because children could climb or pass through it and fall to a lower deck.  W.A. fell and injured herself

---

[2] The district court also entered an order awarding Carnival its costs.  Amy separately appealed from that order, *see* D.E. 89, and we consolidated the two appeals.  Because we reverse the district court's summary judgment order, we also vacate the award of costs.

doing just that.  For multiple reasons, Carnival knew that the guard rail posed such a risk.  And Carnival negligently created, maintained, and failed to warn about the danger the guard rail posed to small children.

Carnival answered.  It denied negligence, asserted it had no actual or constructive notice of the dangerous condition, but did not raise a defense that the condition was open and obvious.

During discovery, the parties deposed the following witnesses, among others.  At least three *Liberty* passengers testified that Carnival warned passengers about the guard rails at safety meetings.  Nancy Mitchell testified that, at the beginning of the cruise, she attended a mandatory safety drill at which crew members warned passengers in person not to "climb up rails," "try to sit on them," "try to get selfies [or] lean[] over" them.  She also testified that crew members said that "accidents can happen, that there have been passengers [who] have fallen off." The two brothers, who witnessed W.A. fall while waiting in line for the water slide, testified similarly, albeit with less detail.

Frank Fore, Amy's engineering expert, executed an affidavit and a Rule 26 report.  Per his affidavit, he inspected the *Liberty* and another cruise ship, the *M/S Disney Wonder*.  It appears that Carnival never challenged or rebutted Fore's Rule 26 report and affidavit at any point in the district-court proceedings.

4

In the executive summary of his report, Fore states the following. "Falls from heights, *e.g.,* buildings, have caused significant injuries and deaths among young children; and have been one of the most common reasons for emergency room visits." "Guards with horizontal metal courses present a 'ladder effect' which can attract small children and encourage them to attempt to climb through or over such guards." Some jurisdictions have proactively required safety "measures to protect small children from falls from heights (*e.g.,* window guards and making balcony railings difficult for small children to pass through or climb over)." Respected safety organizations "have long recommended that any open spaces between barriers and guardrails be narrowed so that a four (4) inch sphere (or a small child's head/torso) not be capable of passing through any such space." "Proactive structural measures, to make barriers and guardrails more difficult for small children to climb over or through, have found their way on to some cruise ships," such as the *Disney Wonder.* Carnival itself "utilizes flat clear panel barriers in lieu of open, ladder-effect (*i.e.,* climbable) horizontal metal guardrails; and . . . angles barriers and guardrails back toward potential child climbers (an effective form of anti-climb protection)." However, it does so "in some, but not all, locations aboard the *Carnival Liberty* and other vessels in its fleet."

More specifically, Fore analyzed the accident location. "Deck 14 forward of the *Carnival Liberty* is a location where a fall from height to the hard deck below

(Deck 12) is capable of producing sufficient forces to seriously injure or kill a toddler or small child." Therefore, this location "requires an effective barrier or guardrail that minimizes the risk of small children climbing through or over such a barrier." The Deck 14 guard rails "consist of horizontal metal railings with open, wide spaces that are sufficient for small children to pass through; and lack anti-climb measures such as" solid paneling or curved guard rails. The configuration of the Deck 14 guard rails contravenes the previously mentioned recommended safety standards.

Carnival's corporate representative, Suzanne Vasquez, testified to the following on Carnival's behalf. She confirmed that a "general purpose[] of the guard rails like the one involved in this case . . . includ[es] being efficient to contain humans [including small children] on one side from getting to the other side." And Carnival conceded that "a guard rail that for whatever reason would not be efficient to contain foreseeable human beings on one side, and not allow them to get to the other side . . . would be dangerous." Carnival knows that "if a guard rail has sufficient space between the lower [courses,] . . . in theory a small human being could get through there." Carnival was aware "[t]hat if you go over or somehow through [a guard rail], you could fall 10 feet and die or get very injured." The danger of falling over a railing is "apparent." For that reason, it is "common knowledge" that climbing a guard rail is "inherently dangerous" for a

6

child.  She also explicitly acknowledged that the Deck 14 railing is climbable and has no climb protection and that Carnival knew the same.  Carnival "do[es] everything we can to protect our guests and our crew" and "safety and security of guests and crew is of preeminent importance all the time."

Ben Clement, Carnival's Director of Shipbuilding since 2006 or 2007 and the senior vice president in charge of new build and dry-dock refurbishments, agreed that the primary purpose of having barriers or guard rails on balconies and other locations on Carnival's ships, including the accident location, is safety, "to keep people from falling."  And he agreed that Carnival "understands that . . . people [who] need to be kept from falling include[] small children."  He testified that Carnival "design[s] to the extreme safety."  Carnival previously modified other railings to prevent climbing because it was aware of "the temptation of climbing" and that climbable railings "could be potentially unsafe."  Finally, Clement testified that, in the context of his job with Carnival, he had heard of a safety recommendation that "[o]pen guards shall have balusters or ornamental patterns such that a four-inch diameter sphere cannot pass through any opening, up to a height of 34 inches."  There was an internal discussion about that standard, and Carnival implemented that standard for ships at least as early as 2005 or so, when the planning for another ship, the *Dream*, began.

7

Carnival moved for summary judgment based on lack of notice evidence. Amy opposed Carnival's motion and filed a statement of disputed material facts.

The district court granted summary judgment for Carnival, holding that Carnival owed W.A. no duty. As to the negligent-creation-and-maintenance claim, the court found no evidence that Carnival had actual or constructive notice of the risk-creating condition. Its analysis turned on specificity. The court concluded that "[n]othing in the record permits the conclusion that Carnival had actual notice that the <u>specific</u> alleged risk-creating conditions—that is, [the railing's exact measurements]—were dangerous."[3] It reasoned that "evidence of general railing dangers is not sufficient." The court said that Carnival's warning against climbing on railings at the mandatory muster drill was too general to serve as evidence of notice of the specific alleged risk-creating conditions. As for constructive notice, the court considered the safety recommendations and the *Disney Wonder*'s safety measures but concluded that neither indicated notice. The district court cited Clement's testimony once and Fore's never. As for the failure-to-warn count, the district court concluded that the danger posed by the rail was open and obvious; thus, Carnival had no duty to warn. Amy appealed.

II.

---

[3] The district court also described the "specific risk-creating conditions" as "the alleged unreasonably wide distance between the courses, the alleged unreasonably short height of the railing, and the alleged unreasonably dangerous lack of plexiglass or other solid barriers."

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But it is improper if a reasonable jury could find for the non-moving party. *Guevara*, 920 F.3d at 720.

### III.

Because W.A.'s injury "occurred on a ship sailing in navigable waters," federal maritime law governs this action. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1263–64 (11th Cir. 2020). "In analyzing a maritime tort case, we rely on general principles of negligence law." *Id.* at 1264.

To win on her maritime negligence claims, Amy must prove that, among other things not at issue here (i.e., breach, causation, and harm), Carnival had a duty to protect her from a particular injury.[4] *See id.*; *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015) (characterizing the "particular injury" there as a "slip and fall"). For a duty to arise, Carnival must "have had actual or

---

[4] That duty is one of reasonable care under the circumstances. *Carroll*, 955 F.3d at 1264; *Guevara*, 920 F.3d at 720; *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). Our prior precedent forecloses Amy's argument for a heightened duty of care. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) (stating our prior-precedent rule).

constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.  [Carnival's] liability thus hinges on whether it knew or should have known about the [risk-creating condition]."  *Keefe*, 867 F.2d at 1322.

Unlike notice, which is material to both of Amy's claims, whether the condition is "open and obvious" impacts a negligent-maintenance claim differently than a failure-to-warn claim.  For a negligent-maintenance claim, a shipowner "may still be liable for maintaining a dangerous condition even if the danger was obvious."  *Carroll*, 955 F.3d at 1267.  Yet, with respect to a failure-to-warn claim, "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious."  *Id.* at 1264.

We begin by analyzing the notice issue.  Then we turn to the district court's grant of summary judgment on the failure-to-warn claim because the dangerous condition was open and obvious.

## A.

In concluding that Carnival lacked notice of the guard rail's alleged risk-creating conditions, the district court failed to view the evidence in a light most favorable to Amy, the non-moving party, and to draw reasonable factual inferences in her favor.  Take, first, the evidence of Carnival's warnings to its passengers.

10

"Evidence that a ship owner has taken corrective action can establish notice of a dangerous . . . condition." *Id.* at 1265. Corrective action includes warning passengers about a danger posed by a condition. *See id.* (citing *Guevara*, 920 F.3d at 720–22, and *Sorrels*, 796 F.3d at 1288, for their holdings involving warning signs as evidence creating issues of material fact as to notice). But "[n]ot all warning[s] . . . will be evidence of notice; there must also be a connection between the warning and the danger." *Guevara*, 920 F.3d at 721.

*Guevara* involved such a connection. There, a "watch your step" warning was sufficiently connected to a danger posed by a small step down to withstand summary judgment. *Id.* at 721–22. The district court found no notice because the sign only "generically advise[s] passengers to 'hold the handrail' and 'watch your step' as they climb the three steps to the landing. It does not warn of a potential danger associated with the small step from the landing to the deck." *Id.* at 722. We disagreed with the district court's reasoning about the warning's generic nature compared to a more specific danger because, we reiterated, we view the evidence and draw factual inferences in favor of the non-moving party at the summary judgment stage. *Id.* We held that there was a genuine issue of material fact as to notice. *Id.*

Here, starting with the danger of falling over the rail, Nancy Mitchell testified that Carnival warned passengers not to "climb up rails," "try to sit on

11

them," "try to get selfies [or] lean[] over" them because "accidents can happen" and "there have been passengers [who] have fallen off."  Carnival's warning and the falling-over danger posed by the Deck 14 guard rail line up—certainly a "sufficient connection" exists between the warning and the danger, as in *Guevara*.[5]  *See id.* at 721.  Viewed in a light most favorable to Amy, this warning evidence is enough to withstand summary judgment as to notice.  *See id.* at 721–22 (reversing summary judgment as to notice given evidence of a warning sufficiently related to the danger at issue); *Sorrels*, 796 F.3d at 1289 (concluding, in a case where the plaintiff slipped on a deck that was wet from rain, that evidence that "slippery when wet" signs were sometimes posted on the ship's deck after rain was sufficient to withstand summary judgment as to notice).

In rejecting Carnival's warning as too generic, the district court failed to view Nancy Mitchell's testimony in a light most favorable to Amy.  *See Guevara*, 920 F.3d at 722.  The district court here relied on the *Guevara* district court's grant of summary judgment and its reasoning that the warning was too generic compared to the specific danger at issue.  But we explicitly addressed and rejected that reasoning on appeal in *Guevara*.  *See id.*  To be sure, the district court here did not

---

[5] We reject Carnival's argument that the warnings were directed at adult, not children, passengers.  Not only do we fail to see such a distinction in the testimony, but also the required "connection" is not so narrowly defined.

Also, we need not decide whether this warning was also evidence of notice of the falling-through condition because, for reasons discussed later, at least Vasquez's and Clement's testimony create a dispute of fact as to notice of that specific danger.

12

have the benefit of our decision in *Guevara* at the time it granted summary judgment in this case. But under *Guevara*, suffice it to say that the district court's focus on specificity here was too exacting for this notice issue at summary judgment. *See id.* at 721–22.[6]

As for the danger of falling through the rail, a reasonable jury could find that Carnival had notice of this danger based on Vasquez's and Clement's testimony. Perhaps most accessible and intuitive to a reasonable jury was Vasquez's testimony (on Carnival's behalf) that (1) guard rails' general purpose is to prevent people from getting from one side to the other, which Clement corroborated; (2) a guard rail ineffective at serving that purpose is dangerous; (3) a child can get through a sufficiently wide space; (4) an obvious danger of falling results from climbing a guard rail; and (5) Carnival knew that the Deck 14 guard rail is climbable and has no climb protection. And a reasonable jury could understand Clement's testimony to show that Carnival knew of the dangers of climbable railings, as well as the 4-inch safety standard, and implemented that standard to prevent children from falling through the guard rails.

In light of the other evidence in the case, additional aspects of Vasquez's, Clement's, and Fore's testimony together fuel a dispute of fact as to whether

---

[6] This case does not call for further discussion about how specific warnings must be relative to the alleged danger at issue to qualify as evidence of notice, so we will leave it at that.

Carnival should have known of the guard rail's alleged risk-creating conditions. Both Vasquez and Clement testified that Carnival prioritized safety and went above and beyond to ensure passenger safety. Given their testimony, a reasonable jury could conclude that Carnival should have known about the subjects of Fore's testimony. Moreover, as Fore noted, Carnival in fact already utilized railing configurations on the *Liberty* and other ships in Carnival's fleet that complied with safety recommendations. And, as far as we can tell, Carnival never challenged or rebutted Fore's testimony. The district court made no mention of his testimony, which, as we see it, could have carried considerable weight for a jury.

It bears repeating that our task here is merely to decide whether the record contains evidence from which a reasonable jury could conclude that Carnival knew or should have known that children could climb or pass through the Deck 14 guard rail and fall. It does.[7] To be clear, a reasonable jury also could see other evidence to indicate that Carnival lacked notice. But it is not for us to weigh the evidence and decide; that task is for the jury. Because a genuine dispute of fact exists as to notice, the district court erred in granting summary judgment on that basis.

B.

---

[7] Because there was evidence that Carnival had actual notice that the railing posed both dangers, we need not decide whether notice of one of the dangers would necessarily establish notice of the other.

As to the failure-to-warn claim, we must consider another basis that the district court offered for granting summary judgment: The dangerous condition was open and obvious. Sure enough, "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll*, 955 F.3d at 1264. But a district court may "grant [a summary judgment] motion on grounds not raised by a party" *only* "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

The district court did not do so here. Neither in its answer nor in its summary judgment motion did Carnival raise an "open and obvious" defense, and it does not argue to the contrary on appeal. We see no sign that the district court gave Amy notice that it planned to decide the failure-to-warn claim on the condition's open and obvious nature, much less an opportunity to respond. Yet the district court indeed granted the motion on that basis for the failure-to-warn claim and even impliedly acknowledged what it was doing: "Carnival's motion is premised only on the notice issue." Therefore, the district court erred in granting summary judgment on this basis.

## IV.

In conclusion, the district court erred in granting summary judgment for Carnival as to both claims. Therefore, we reverse and remand for further proceedings. We also vacate the award of costs to Carnival. *See Sorrels*, 796 F.3d

15

at 1279 n.1 ("Because we vacate the district court's summary judgment order, we vacate the award of costs.").

**REVERSED AND REMANDED.**