[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13702

Non-Argument Calendar

_____

LORI LUCAS,
a resident and citizen of Canada,

Plaintiff-Appellant,

*versus*

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-20914-RNS

————————————

Before NEWSOM and LUCK, Circuit Judges.[*]

PER CURIAM:

Lori Lucas appeals the district court's final judgment, after a bench trial, for Royal Caribbean Cruises, Ltd. on her negligence claims.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In March 2018, Lucas and her family embarked on a cruise on Royal Caribbean's Harmony of the Seas.  On the morning of the last day of the cruise, Lucas and her family went ice skating onboard the ship.  That morning, Royal Caribbean had three employees monitoring the ice rink—one employee checked in guests, a second employee provided ice skates and other equipment to the guests, and a third employee assisted the first two and answered guest questions.  When Lucas and her family checked-in to the rink, the check-in employee didn't ask her to sign a waiver because she had already signed a waiver earlier in the week on behalf of her son.  That waiver warned:

---

[*] This opinion is being entered by a quorum pursuant to 28 U.S.C. § 46(d).

> [I]ce is very slippery and depending upon individual skill and experience level, ice skating may involve falls upon the ice, collisions with other skaters, objects or structures, and maybe [sic] therefore considered a dangerous activity which skater . . . has elected to voluntarily particpate [sic] with full knowledge, acceptance and assumption of any and all risks of serious personal injury . . . .

The waiver also set out certain rules for ice skaters, including: "avoid other skaters"; "do not skate against traffic"; "persons ahead of you have the right of way"; "always keep moving"; "do not skate faster than conditions permit"; and "no tricks, jumps, weaving or horseplay." There was no rule against skating backward.

After collecting her skates, Lucas began skating with her family. About eight minutes after Lucas entered the rink, a male skater also entered the rink. Two minutes later, when Lucas turned to exit the ice rink, the male skater clipped the back of Lucas's skate while he was skating backward, knocking Lucas to the ice. The male skater skated away, apparently unaware he had hit Lucas's skate. Lucas, however, fractured her left tibia when she fell. After the ship docked the next morning, Lucas went to the hospital and had surgery on her broken leg.

Lucas sued Royal Caribbean for (1) negligently supervising the ice rink by failing to prevent backward skating, (2) failing to implement and enforce a policy against backward skating, and (3) failing to properly train crew members to supervise the rink and

prevent backward skating.  Royal Caribbean responded that it was not negligent for allowing backward skating and that the risks and dangers associated with ice skating are open and obvious.  Royal Caribbean also contended that, even if it was negligent, its negligence was not the proximate cause of Lucas's injury.

The case proceeded to a bench trial.  The district court heard testimony from eight witnesses, including dueling experts on ice rink safety.  After the trial concluded, the district court found that Royal Caribbean had not breached its duty to warn against, or prevent injury from, backward skating, and that any breach was not the proximate cause of Lucas's injury.

First, the district court found that Royal Caribbean had "no previous notice that would have required it to prohibit skating backwards" since "[b]ackwards skating is not a prohibited activity within industry standards."  Further, the district court explained that although some other Royal Caribbean ships prohibited backward skating, that "d[id] not impose a legal duty" on Royal Caribbean to prohibit it on all its ships.  Thus, the district court concluded that Royal Caribbean didn't breach its duty to Lucas.

Second, the district court found that, "no matter how many crewmembers had been monitoring the ice and even if a crewmember were on the ice at the time of the incident," Royal Caribbean's employees couldn't have prevented the accident because there were only two seconds between when the male skater began skating backward and his collision with Lucas. So, the district court explained,    even    though    the    supervising    Royal    Caribbean

employees were "not . . . paying as close attention as they should have been . . .,  even had they been watching, they still wouldn't have had time to intervene to prevent" Lucas's accident.  Thus, the district court concluded that any failure to adequately supervise "was not the proximate cause of the accident."

Third, the district court found that "no credible evidence was presented to show that, had [Royal Caribbean's] staff previously warned the backward skater, he would not have resumed skating backward, regardless, after being admonished not to."  Because Lucas presented no evidence that the backward skater would follow a rule against backward skating, the district court found that the failure to prohibit it was not the proximate cause of the accident.

Lucas moved for a new trial arguing (among other things) that the district court erred by placing the evidentiary burden on her to show that the male skater would have heeded a rule against backward skating.  The district court denied Lucas's motion.  It explained that Lucas "failed to establish at trial that Royal Caribbean either had or should have had a policy against backward skating." Thus, the district court concluded, "the crewmembers had no duty to admonish the male skater to stop skating backwards."  The district court then reiterated that even if Royal Caribbean had a rule against backward skating, "Lucas provide[d] no facts to support her cursory conclusion that warning the male skater not to skate backward would have stopped him from thereafter skating backward for the rest of the skate session."  The district court explained that

6                    Opinion of the Court                    20-13702

it remained Lucas's burden to "submit evidence that proves the facts upon which she relie[d]."

## STANDARD OF REVIEW

On an appeal from a judgment in a bench trial, we review de novo the district court's conclusions of law and its application of the law to the facts. *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018). "The district court's findings of fact, on the other hand, are evaluated under the clear-error standard." *Id.* "We will not find clear error unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted). When reviewing for clear error, we "draw[] all inferences in favor of the district court's decision." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1253 (11th Cir. 2016).

## DISCUSSION

This case is governed by federal maritime law, under which the owner of a ship in navigable waters owes a passenger a duty of reasonable care under the circumstances. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). To prevail on her negligence claim, Lucas was required to prove that (1) Royal Caribbean had a duty to protect her from a particular injury, (2) Royal Caribbean breached that duty, (3) the breach actually and proximately caused her injury, and (4) she suffered actual harm. *Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1167–68 (11th Cir. 2021).

For a negligence claim based on Royal Caribbean's direct liability, the duty of reasonable care "standard requires, as a prerequisite to imposing liability," that Royal Caribbean "had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)); *but see Yusko*, 4 F.4th at 1170 (holding that, in negligence claims based on vicarious liability, notice of the risk-creating condition is not required to hold a shipowner liable for the negligent acts of its employees). "In this circumstance, a cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720 (internal quotation marks omitted).

On appeal, Lucas challenges only the third ground for the district court's ruling—its finding that there was no evidence the backward skater would have followed a rule against backward skating. She argues that the district court erred by placing the burden on her to prove that the male skater would have followed the rules if warned. Rather, she contends that we should apply a "heeding presumption" and "presume[] that the person receiving the warnings will heed and respond to them."

We assume (without deciding) that the heeding presumption applies in negligence cases and that the district court erred by not applying it. Even so, because Lucas fails to challenge the other

two grounds for the district court's decision—that Royal Caribbean had no duty to prevent or warn about backward skating and that any failure to supervise didn't proximately cause her injury—we must affirm. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, . . . it follows that the judgment is due to be affirmed.").

First, the district court found that Royal Caribbean didn't have a duty to prohibit or warn about backward skating. The district court credited Royal Caribbean's expert's testimony that "the vast majority [of ice rinks] do not prohibit backwards skating." Industry standards also didn't prohibit backward skating and "left [it] up to each facility" to set rules for safe skating. Nor did Royal Caribbean's ships have a history of injuries involving backward skating that would have required Royal Caribbean to warn about its risks. Because Royal Caribbean had no notice that backward skating was a "risk-creating condition," it had no duty to prohibit or warn about it. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Circ. 2020); *Guevera*, 920 F.3d at 720. Thus, the district court concluded that Royal Caribbean didn't breach its duty to Lucas.

Second, the district court also found that, even if Royal Caribbean had a duty, any failure to supervise and prevent or warn

20-13702          Opinion of the Court          9

about backward skating didn't proximately cause Lucas's injury. Lucas turned into the path of the backward skater while she was trying to exit the ice rink, and there were less than two seconds between when the skater turned around and his collision with Lucas. Thus, the district court found that, even if the backward skater had been skating forward, he still would have collided with Lucas and caused her injury. Skating forward or backward, the district court found that two seconds was not enough time for the skater to avoid the collision, regardless of how closely Royal Caribbean was monitoring the rink.

In her reply brief, Lucas argues for that first time that even if Royal Caribbean had no duty to prohibit or warn about backward skating, Royal Caribbean still "violated its duty to supervise skaters on the ice-skating rink and to enforce its own skating rules." According to Lucas, the backward skater violated "multiple rules," and the failure to stop him caused Lucas's injury. But arguments raised for the first time in a reply brief are waived. *See Sapuppo*, 739 F.3d at 678.

Even if we considered Lucas's argument, Royal Caribbean had no rule against backward skating, and there wasn't enough time for Royal Caribbean's employees to intervene. The district court found that the backward skater was "skating skillfully and not recklessly" before the accident. Thus, as the district court concluded, even if Royal Caribbean's employees had been monitoring the ice more closely, they still couldn't have prevented Lucas's injury. And Lucas doesn't argue that any of the other alleged rule

violations caused the accident, so the alleged failure to supervise and enforce the rules didn't cause her injury.

In sum, because Lucas doesn't challenge the district court's conclusions that Royal Caribbean didn't breach its duty to her by failing to prohibit backward skating and that any failure to supervise and prevent or warn about backward skating didn't cause her injury, we **AFFIRM** the judgment.