[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13605
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cv-61463-BSS

JANET FRANCIS,

                                        Plaintiff - Appellant,

versus

MSC CRUISES, S.A.,

                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(November 20, 2020)

Before ROSENBAUM, JILL PRYOR and BRANCH, Circuit Judges

PER CURIAM:

Janet Francis appeals the grant of summary judgment in her negligence action against MSC Cruises, S.A., following a slip and fall aboard the *MSC Davina*. She argues that a genuine dispute of material fact exists as to whether MSC was on notice about the presence of the slip hazard that caused her fall—a piece of watermelon. She also argues that the court erred in granting summary judgment *sua sponte* and without notice on two of her theories of negligence: negligent design and negligent maintenance. After a careful review of the briefs and the record, we conclude that no genuine dispute of material fact exists as to whether MSC was on notice about the watermelon. However, we agree with Francis that the court erred in granting summary judgment on the negligent design and negligent maintenance theories. We therefore affirm in part and vacate in part.

## I. BACKGROUND[1]

One evening, while on a cruise aboard the *MSC Davina*, Francis and her friend Regina Kenneweg went to a self-service buffet. To get to the buffet, they walked through an interior corridor from an exterior deck. When they entered the corridor, they noticed that the floor was dirty. It appeared as though passengers

---

[1] Where facts are disputed in the record, we recount them here in the light most favorable to the plaintiff. *See Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018) (on review of a district court's grant of summary judgment, we construe all facts and draw all reasonable inferences in favor of the nonmoving party).

2

had been carrying food from the buffet through the corridor out to the deck, and some of that food had spilled onto the floor. The two women walked carefully through the corridor, making sure not to step on any of the spilled food. They made it safely to the buffet.

Francis and Kenneweg disagree about how long they were at the buffet. Francis believes they were there for 10 or 15 minutes. Kenneweg recalls that it was closer to 30 minutes. When they left the buffet, they walked through the same interior corridor to get to their room. Both Francis and Kenneweg noted that the corridor had been cleaned in their absence. As far as they could see, there was no longer food on the floor. Nevertheless, they walked through the corridor with extra caution, actively looking for more fruit on the floor.

As they walked, Francis slipped and fell on a piece of watermelon. Francis describes the watermelon as about an inch and a half to two inches in size; Kenneweg remembers it being smaller than a quarter. Neither woman noticed the watermelon before Francis slipped on it. When Francis fell, there was a group of crewmembers wearing black uniforms, similar to what maids might wear, standing approximately eight feet away.

Francis was taken to the ship's infirmary where she was x-rayed and misdiagnosed with a sprain. Upon returning home, Francis visited another doctor, who diagnosed her with a broken tibia, which ultimately needed surgery to repair.

Francis later sued MSC for a single count of negligence, alleging three different theories of negligence:  negligent design of the corridor's floor, negligent maintenance of the corridor's floor, and negligent failure to warn about the slip hazard.

During discovery, MSC conceded its knowledge that passengers often take food from the buffets to eat in other parts of the ship and that food is often dropped on the ship's floors.  MSC's policies require crew members to identify slipping hazards and remove them as quickly as possible.

Following discovery, MSC moved for summary judgment on the ground that it had no actual or constructive notice of the slip hazard—the piece of watermelon on the floor.  Francis did not contend that MSC had actual notice of the watermelon, and MSC argued that it had lacked constructive notice of this slip hazard because there was no evidence of similar slip and fall incidents involving food or beverages in this corridor or similar corridors or hallways in any of the *Davinia's* sister ships in the same class.  Francis filed a cross motion for partial summary judgment on the ground that there was no disputed issue of material fact related to several issues in the case, including that the floor where she slipped was not reasonably slip-resistant when contaminated with a slipping hazard and that MSC was on notice of the piece of watermelon that caused her to fall.

4

The magistrate judge granted MSC's motion for summary judgment and denied Francis's.[2] In granting MSC's motion, the magistrate judge found that the watermelon was not present in the hallway for long enough to invite corrective measures and that there was no history of substantially similar incidents aboard the *Davina* or her sister ships classwide. As a result, MSC had no actual or constructive notice of the slip hazard and could not be held liable for Francis's fall. Following the grant of summary judgment, the magistrate judge entered a final judgment in favor of MSC and against Francis, closed the case, and declared all motions moot.

This is Francis's appeal.

## II. STANDARD OF REVIEW

"We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018). Summary judgment is appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict

_____

[2] The parties consented to having a magistrate judge conduct all proceedings in the case. *See* 28 U.S.C. § 636(c)(1).

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Even where the parties agree on the facts, if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018) (internal quotation marks omitted).  But conclusory allegations and speculation are insufficient to create a genuine issue of material fact.  *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

## III. DISCUSSION

On appeal, Francis challenges the grant of summary judgment on her theory of negligent failure to warn, arguing that a reasonable jury could find that MSC had constructive notice of the slip hazard.  She also argues that the magistrate judge erred in granting summary judgment *sua sponte* on her negligent design and negligent maintenance claims.

Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters.  *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989).  "In analyzing a maritime tort case, we rely on general principles of negligence law." *Guevara v. NCL (Bahamas) Ltd.*,

920 F.3d 710, 720 (11th Cir. 2019) (alteration adopted) (internal quotation marks omitted). To prevail on a negligence claim under maritime tort law, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Id.* (internal quotation marks omitted).

Generally, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). Normally, this duty of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Guevera*, 920 F.3d at 720 (alteration adopted) (internal quotation marks omitted). Under this standard, "a cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition." *Id.* (internal quotation marks omitted).

## A. The District Court Did Not Err in Granting Summary Judgment on Francis's Failure-to-Warn Claim.

Francis's failure-to-warn claim rests on whether MSC had notice of the piece of watermelon that caused her to fall. Absent actual notice, a plaintiff can establish constructive notice by showing that a hazard existed for a sufficient

7

period "to invite corrective measures" or by providing evidence of substantially similar incidents in the past. *Guevera*, 920 F.3d at 720.

Francis does not argue that MSC had actual notice of the slip hazard posed by the piece of watermelon, nor does she provide evidence of substantially similar previous incidents aboard the *Davina*. Therefore, her failure-to-warn claim rests on establishing that the slip hazard existed long enough to invite corrective measures.

There is no direct evidence in the record of how long the watermelon was on the floor, so we are forced to rely on inferences based on the evidence that does exist. The evidence shows the following: The floor of the corridor was dirty when Francis and Kenneweg first walked through. They were gone for somewhere between 10 and 30 minutes. While they were gone, someone cleaned the floor. As she walked back through the corridor, Francis made sure to walk carefully and "actively look[ed] for fruit on the floor." Doc. 39-1 at 75.[3] Even with this extra care, Francis did not see the watermelon. When she fell, several crewmembers were standing nearby talking amongst themselves. In addition, MSC's policies instruct crew members to look for slip hazards on the floor and remove them as quickly as possible. Francis argues that these facts are enough for a reasonable jury to draw the inference that the watermelon was on the floor for at least 30

---

[3] "Doc." numbers refer to the district court's docket entries.

8

minutes and that the nearby crewmembers should have been aware of the watermelon. These two inferences, Francis contends, would allow a jury to conclude that MSC had constructive notice of the watermelon on the floor.

We disagree. Francis herself, though walking carefully and looking for fruit, did not see the watermelon before she fell. We cannot say that a reasonable factfinder could infer that crewmembers a short distance away should have noticed a single small piece of watermelon. And Francis admits that she has no way of knowing whether the watermelon fell to the floor before or after she entered the buffet, so we cannot say how long the watermelon was there. Such speculation cannot be the basis on which a party overcomes summary judgment. *Cordoba*, 419 F.3d at 1181.

Francis nonetheless argues that a reasonable jury could infer that MSC was aware of the watermelon because in an unpublished maritime slip and fall case we held that 30 minutes was sufficient time to invite corrective measures. But that case is neither binding precedent nor does it offer a helpful comparison. *See Plott v. NCL America, LLC*, 786 Fed. App'x 199 (11th Cir. 2019) (unpublished). The hazard in *Plott*—large puddles of water on an interior floor—was more obvious than a piece of watermelon small enough to go unnoticed by someone carefully scanning the floor for it. *Id.* at 201. Our law does not require crew members to be

on notice within 10 to 30 minutes of every small piece of food that falls to the floor, on a ship where hundreds of passengers are walking with food each day.

Because there is no genuine dispute of material fact as to whether MSC was on notice about the dangerous condition, the magistrate judge's grant of summary judgment was proper.

**B. The District Court Erred When It *Sua Sponte* Granted Summary Judgment to MSC on Francis's Theories of Negligent Design and Negligent Maintenance.**

Francis next argues that the magistrate judge erred in *sua sponte* granting summary judgment—without notice—on her negligent design and negligent maintenance claims. In response, MSC argues that Francis did not plead negligent design and maintenance theories in her complaint and that, even if she did, those claims were addressed in the summary judgment briefing. MSC also maintains that this argument has been waived because Francis failed to object before the magistrate judge. We agree with Francis that the grant of summary judgment on these claims was improper.

Francis's complaint alleged that MSC breached its duty to her by, among other things, "[c]hoosing and/or approving a deck material that was unreasonably slippery," "[c]hoosing and/or approving a deck material that was unreasonably slippery when food and/or liquids was on it," and "failing to reasonably inspect the deck material, discover it was unreasonably slippery, and make it safer." Doc. 1 at

10

8.  Francis alleged theories of negligent design or maintenance sufficient to meet the notice pleading requirements of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8; *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (internal quotation marks omitted)).

Federal Rule of Civil Procedure 56 states that a party seeking summary judgment must "identify[] each claim . . . or the part of each claim . . . on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  MSC's motion did not state the specific claims or theories on which it was moving for summary judgment, but nothing in the motion suggests it was moving on any theory other than failure to warn about the watermelon.  The motion opens by noting that the "[p]laintiff unequivocally testified that she slipped on fruit."  Doc. 43 at 2.  It then goes on to state that MSC is entitled to summary judgment because "there is no evidence showing MSC had notice of the [watermelon]."  *Id.*  MSC argues that it addressed the maintenance and design of the corridor when it discussed the slip resistance of the floor material in other briefing—its response to Francis's motion for summary judgment and its reply brief in support of its own summary judgment motion.  Although these briefs mentioned the slip resistance of the floor, they did so only in the context of discussing the duty owed to Francis to warn her about the

watermelon.  Furthermore, even if these briefs dealt directly with negligent design or maintenance, discussion in response or reply briefs of claims on which MSC did not move for summary judgment does not satisfy Rule 56(a).  Therefore, the court's ruling on these claims was *sua sponte.*

Federal Rule of Civil Procedure 56(f) governs *sua sponte* grants of summary judgment.  Under this rule, a court must give the parties notice and an opportunity to be heard before ruling *sua sponte* on a claim.  Fed. R. Civ. P. 56(f).  There is no indication in the record that the magistrate judge gave notice about his intention to rule on all of Francis's theories of negligence.  Thus, the *sua sponte* grant of summary judgment on Francis's negligent design and maintenance claims was error.  *See Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011) ("In this case, the court entered judgment on claims not identified by Plaintiffs in their Rule 56 motion and without advanced notice.  This was error.").

MSC argues that even if the grant of summary judgment below violated Rule 56(f), Francis waived this argument by failing to object before the district court.  We reject this argument.  Once the magistrate judge granted summary judgment, he immediately entered final judgment and administratively closed the case.  The only way Francis could have objected to the *sua sponte* grant would have been to file a motion for reconsideration.  We have not required

12

reconsideration motions to preserve objections to *sua sponte* grants of summary judgment.  *See, e.g., Amy v. Carnival Corp.*, 961 F.3d 1303 (11th Cir. 2020) (reversing *sua sponte* grant of summary judgment without requiring appellant to have filed motion for reconsideration in district court).  We will not do so here.[4]

## IV. CONCLUSION

For these reasons, the grant of summary judgment on Francis's failure-to-warn theory is **AFFIRMED**.  The grant of summary judgment on the negligent design and maintenance theories is **VACATED** and remanded to the district court for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**

---

[4] MSC also argues in its brief that Francis's negligent design and maintenance theories fail on the merits.  Because this argument has not been brought before the magistrate judge or district court on a motion for summary judgment, we do not address it here.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 & n. 4 (11th Cir. 2001) (expressing the preference that a district court address matters in the first instance before appellate review, even on summary judgment).  We express no opinion about whether MSC can withstand summary judgment review on these grounds on remand.