WILSON, Circuit Judge:
Pablo Guevara slipped and fell as he stepped down from a landing located on the outer deck of a cruise ship operated by NCL (Bahamas) Ltd. Guevara claimed that he did not perceive the step down because NCL failed to adequately warn him of the change in elevation. Moreover, a lightbulb was out in the area where Guevara fell, making it harder for him to navigate the floor level change at night. Guevara sued NCL, alleging that NCL negligently failed to (1) warn passengers of the step down and (2) maintain and inspect the lighting in the area. The district court granted summary judgment in favor of NCL on both claims, holding that Guevara failed to create a genuine issue of material fact regarding NCL's actual or constructive notice of the allegedly dangerous conditions posed by the step down or the unilluminated light.
Guevara appeals the district court's orders (1) striking his expert's supplemental reports and (2) granting summary judgment in favor of NCL. After careful review and with the benefit of oral argument, we reverse and remand the district court's ruling on Guevara's failure to warn claim. We affirm, however, the district court's orders (1) striking Guevara's expert's supplemental reports and (2) granting summary *715 judgment on Guevara's negligent maintenance claim.
I. Factual Background
Guevara was a cruise passenger on the Norwegian Spirit , which departed from Barcelona, Spain. On his first night aboard, at approximately 11:30 p.m., Guevara was walking on an outdoor deck near the pool, searching for the ship's cigar lounge. He walked up three steps to a landing. After the landing, there is a single step down, which Guevara claims he did not see.[1] When he stepped down, Guevara slipped on the deck and fell, landing with his arm wedged between the wall and a handrail. As a result, Guevara broke his arm.
After he fell, Guevara noticed a "sheen" of water on the floor where he slipped and that a lightbulb was out in one of the globe lamps at the top of the steps. Directly underneath the unilluminated lamp was a permanently affixed warning sign: "ATTENTION! FOR YOUR OWN SAFETY PLEASE USE THE HANDRAIL. WATCH YOUR STEP." Guevara contends that he could not see the warning sign because the bulb immediately above the sign was out.
II. Procedural History
Guevara filed a complaint against NCL in the Southern District of Florida. He alleged that NCL negligently failed to (1) warn passengers of the step down, and (2) maintain and inspect the lighting in the area.
A. Expert Witness Reports
The parties proceeded to discovery. The district court's Scheduling Order set Guevara's expert disclosure deadline for June 18th, NCL's expert disclosure deadline for July 2nd, and the disclosure deadline for any rebuttal expert witness reports for July 16th.
Guevara disclosed Dr. Ronald Zollo as an expert and served a copy of his report on June 20th-two days after the expert disclosure deadline.
NCL's human factors and illumination expert, Dr. Joseph B. Sala, opined that there was sufficient lighting on the deck of the Spirit for a reasonably alert and attentive person walking in the area to safely navigate the floor level change. Guevara successfully moved for an extension of time to file rebuttal expert reports. He served Dr. Zollo's rebuttal expert report on July 26th. Dr. Zollo's rebuttal report addressed the step's dimensions and the insufficient slip resistance on the flooring.
On August 19th-the Friday before Dr. Zollo's Monday deposition-Guevara served NCL with a copy of a thirteen-page "Addendum to the Preliminary Report" (First Supplemental Report) that supplemented both Dr. Zollo's initial and rebuttal expert opinions. The First Supplemental Report contained previously undisclosed opinions and references to authoritative materials. NCL proceeded with Dr. Zollo's deposition notwithstanding its objection to the submission of the First Supplemental Report. Dr. Zollo terminated his deposition after three hours and refused to resume later in the day.
Discovery closed on August 26th.
On September 26th-a month after the close of discovery and three days after the district court's deadline for dispositive and Daubert motions-Guevara filed a second, three-page addendum to Dr. Zollo's preliminary *716 report (Second Supplemental Report).
NCL moved to strike Dr. Zollo's testimony and reports because of Guevara's untimely disclosure of Dr. Zollo as an expert witness, Dr. Zollo's early termination of his deposition, and the presentation of new arguments in Dr. Zollo's supplemental reports that were not addressed in NCL's expert's report or alleged in the complaint. NCL also filed a Daubert motion to exclude Dr. Zollo's opinions, arguing that (1) he was not qualified to offer opinions on the construction of seaworthy vessels or human factors; (2) he did not use a sufficiently reliable methodology; (3) his opinions were based on assumptions and speculation; and (4) his opinions would not assist the trier of fact.
The district court did not strike Dr. Zollo's initial expert report as untimely, even though it was filed two days late. In considering Dr. Zollo's First and Second Supplemental Reports, the district court acknowledged that NCL was dilatory in setting the deposition of NCL's corporate representative, which was taken well after the expert discovery deadlines and a week before discovery closed on August 26th. During the corporate representative's deposition, NCL produced for the first time a drawing of the deck area, photographs of the area taken the night of Guevara's fall, and a coefficient of friction (COF)[2] testing report of the deck. The district court found that, given NCL's late production, Dr. Zollo was justified in supplementing his initial report based on the new information obtained during the corporate representative's deposition. Dr. Zollo did not, however, have "carte blanche to supplement everything in both his initial and rebuttal expert reports." As such, the district court excluded certain portions of the First Supplemental Report and the entirety of the Second Supplemental Report because Guevara failed to show that their late disclosure was either justified or harmless.
The district court struck the portion of Dr. Zollo's First Supplemental Report listing industry standards on lighting because it was produced too close in time to Dr. Zollo's deposition. In reaching this conclusion, the district court explained that none of Dr. Zollo's opinions on lighting in the First Supplemental Report referred to any of the late discovery produced by NCL. The district court found that the late submission of the report was not harmless.
The district court struck the entirety of Dr. Zollo's Second Supplemental Report because its late disclosure harmed NCL. While Dr. Zollo was justified in supplementing his initial expert reports on account of NCL's late production of the COF report, the court found no justification for Dr. Zollo supplementing his expert opinion more than five weeks after he received the COF report, over a month after the close of discovery, and three days after the district court's dispositive and Daubert motions deadline. Guevara did not seek leave to extend discovery, which left NCL with no opportunity to depose Dr. Zollo about his Second Supplemental Report.
B. NCL's Motion for Summary Judgment
NCL moved for summary judgment, arguing that there was no record evidence of a dangerous condition, or evidence of actual or constructive notice of a dangerous condition, in the area where Guevara fell. Guevara opposed NCL's motion, asserting *717 two theories of NCL's negligence liability: duty to warn and negligent maintenance. Under the first theory, Guevara argued that NCL failed to adequately warn him of the dangerous condition posed by the step down. Under the negligent maintenance theory, Guevara argued that NCL "permit[ed] the light to go out and remain out and [did] not post[ ] warning signs (or other more effective warnings such as yellow tape) that could have been seen by passengers traveling from the direction that Mr. Guevara was traveling."
The district court granted summary judgment in favor of NCL, holding that Guevara did not create a genuine issue of material fact regarding NCL's actual or constructive notice of the allegedly dangerous condition posed by the step down. The district court rejected Guevara's argument that the presence of the warning sign alone was sufficient to create an issue of fact regarding NCL's notice of the dangerous step.[3] The court reasoned that Guevara offered no evidence that NCL created or affixed the warning sign, and thus failed to create a "logical inference that [NCL] had prior knowledge of the dangerous condition necessitating the warning." Lipkin v. Norwegian Cruise Line Ltd. , 93 F.Supp.3d 1311, 1323 (S.D. Fla. 2015).
Guevara also argued that NCL was on constructive notice that the light had been out because, under NCL's normal practices, the light was checked at 7:00 or 8:00 p.m. The light thus theoretically could have been out for up to four hours before Guevara fell. The district court disagreed. The court reasoned that the possibility that the light could have been out for four hours was not evidence of when the light actually went out. The district court held that Guevara failed to create a genuine dispute of material fact about NCL's notice of the alleged dangerous condition posed by the unilluminated light. Guevara appealed.
III. Discussion
We now consider Guevara's argument that the district court erred in excluding Dr. Zollo's supplemental expert reports and in granting summary judgment to NCL.
A. Exclusion of Supplemental Expert Reports
Guevara challenges the district court's ruling to exclude his expert's supplemental reports, arguing that those reports would have created a genuine dispute of material fact. "We ... review a district court's exclusion of expert reports for abuse of discretion." Corwin v. Walt Disney Co. , 475 F.3d 1239, 1250 (11th Cir. 2007). "A district court abuses its discretion when it makes a clear error of judgment or applies an incorrect legal standard." Sorrels v. NCL (Bahamas) Ltd. , 796 F.3d 1275, 1281 (11th Cir. 2015).
Federal Rule of Civil Procedure 26 requires that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D). In order to make a proper disclosure, parties must, by the deadline, disclose the identity of their experts "accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). This written report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).
*718 Rule 26(e) imposes a duty on an expert to supplement her report "in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). But "[a]ny additions or changes to" the expert report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2) (emphasis added).
If a party violates Rule 26(a) or (e), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) ; see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C. , 549 F.3d 1344, 1363 (11th Cir. 2008) ("Under Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) unless the failure is substantially justified or harmless."). Courts have broad discretion to exclude untimely expert testimony-even when they are designated as "supplemental" reports. See Corwin , 475 F.3d at 1252 ("[A] supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed.").
Guevara submitted Dr. Zollo's supplemental reports out of time. The district court set deadlines for Guevara to produce initial and rebuttal reports from his experts. But Guevara produced Dr. Zollo's two supplemental reports after these deadlines. The district court set a June 18th deadline for Guevara to identify his expert witnesses and produce their reports. Guevara identified Dr. Zollo as an expert and produced his initial report on June 20th. In his initial report, Dr. Zollo opined that Guevara's fall was caused by the inadequate design of the stairway landing, insufficient maintenance of the landing and surrounding area (including insufficient lighting), and the use of improper flooring material that was unreasonably slippery when wet. On August 19th, Guevara filed Dr. Zollo's First Supplemental Report, which listed a host of industry standards on lighting. The standards were not included in Dr. Zollo's initial or rebuttal reports and were not produced ahead of his deposition. A month after the close of discovery and three days after the deadline for dispositive and Daubert motions, Guevara filed Dr. Zollo's Second Supplemental Report. The Second Supplemental Report largely addressed the COF report disclosed by NCL's corporate representative. The district court excluded certain portions of the First Supplemental Report addressing the industry standards on lighting and the entirety of the Second Supplemental Report because Guevara failed to show that the late disclosure of these reports was either justified or harmless. We conclude that the district court did not abuse its discretion.
Guevara argues that the district court erred in excluding portions of the First Supplemental Report because his delay in disclosing these opinions was harmless as NCL had delayed producing documents and responding to discovery. The problem with this argument is that the district court did not strike the opinions in Dr. Zollo's First Supplemental Report that incorporated or relied upon NCL's late discovery. The portions of the First Supplemental Report that the district court excluded made no reference to any of NCL's late discovery. The district court did not abuse its discretion in finding that NCL's late production did not give Dr. Zollo "carte blanche to supplement everything in both his initial and rebuttal expert reports."
*719 We also cannot say that the district court's conclusion that the late disclosure harmed NCL was an abuse of discretion given the timing of Guevara's disclosure of the First Supplemental Report immediately before Dr. Zollo's deposition. Guevara only produced Dr. Zollo's First Supplemental Report on the eve of Dr. Zollo's deposition, which gave NCL little time to review or prepare questions on the new information. The severity of the harm to NCL increased when Dr. Zollo left his deposition after only three hours without the prior agreement of the parties.[4] NCL attempted to object to Dr. Zollo's early departure. In response, Guevara moved for a protective order, claiming that NCL's counsel took an "inordinate amount of time" going through Dr. Zollo's file. But Guevara, not NCL, created the problem by disclosing Dr. Zollo's First Supplemental Report on the eve of Dr. Zollo's deposition.
The First Supplemental Report attempts to bolster Dr. Zollo's preliminary and rebuttal opinions regarding lighting conditions in response to NCL's expert report. But "a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." Companhia Energetica Potiguar v. Caterpillar Inc. , No. 14-cv-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016). Given these facts, we cannot say that the district court abused its discretion when it struck portions of Dr. Zollo's First Supplemental Report.
We also cannot say that the district court abused its discretion in striking Dr. Zollo's Second Supplemental Report in its entirety. The district court acknowledged that NCL was not diligent in producing the COF report, and permitted Dr. Zollo to supplement his initial expert report after receiving the new information. But Guevara unreasonably delayed in filing that supplement. Guevara filed Dr. Zollo's Second Supplemental Report more than five weeks after he received the COF report, over a month after the close of discovery, and three days after the district court's deadline for dispositive and Daubert motions. Guevara did not seek leave of the district court prior to disclosing the Second Supplemental Report, nor did he move to extend discovery.
Our decision in Reese v. Herbert , 527 F.3d 1253 (11th Cir. 2008), is instructive. In Reese , a plaintiff filed his expert report almost seven weeks after the close of discovery. 527 F.3d at 1264-65. This late filing harmed the defendants because it "foreclosed the defendants' opportunity to depose [the expert]." Id. at 1265. We found that, at a minimum, the plaintiff could have filed a motion to extend discovery to permit a proper disclosure, but he failed to do so. Id. at 1266. "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise," we reasoned, "compliance with the requirements of Rule 26 is not merely aspirational." Id. Accordingly, we held that the district court did not abuse its discretion in striking the expert's report in its entirety. Id.
Similarly, the district court did not abuse its discretion in striking the Second Supplemental Report, which Guevara unreasonably delayed in filing. By that point, NCL had already filed its motion for summary judgment and Daubert motions. As in Reese , Guevara never sought leave of the district court for the late filing or moved to extend discovery.
We thus conclude that the district court did not abuse its discretion in striking a portion of Dr. Zollo's First Supplemental *720 Report and the entirety of his Second Supplemental Report.
B. Summary Judgment
Guevara contends that the district court erred in holding that (1) the warning sign was insufficient to establish NCL's actual or constructive notice of the dangerous condition posed by the step down, and (2) Guevara failed to present evidence of negligent maintenance of the lightbulb.
"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." Stephens v. Mid-Continent Cas. Co. , 749 F.3d 1318, 1321 (11th Cir. 2014). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is improper, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters. See Keefe v. Bahama Cruise Line, Inc. , 867 F.2d 1318, 1320-21 (11th Cir. 1989). "In analyzing a maritime tort case, [we] rely on general principles of negligence law." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting Daigle v. Point Landing, Inc. , 616 F.2d 825, 827 (5th Cir. 1980) ).
To prevail on a negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." Id. With respect to the duty element in a maritime context, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique , 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). This standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." Keefe , 867 F.2d at 1322. In this circumstance, a cruise ship operator's liability "hinges on whether it knew or should have known" about the dangerous condition. Id.[5]
A maritime plaintiff can establish constructive notice with evidence that the "defective condition exist[ed] for a sufficient period of time to invite corrective measures." Monteleone v. Bahama Cruise Line, Inc. , 838 F.2d 63, 65 (2d Cir. 1988) ; see Keefe , 867 F.2d at 1322 ; Rodgers v. Costa Crociere, S.p.A. , No. 08-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009). Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which "conditions substantially similar to the occurrence in question must have caused the prior accident." Jones v. Otis Elevator Co. , 861 F.2d 655, 661-62 (11th Cir. 1988).
i. Guevara's Failure to Warn Claim
Guevara argues that NCL failed to adequately warn him of the dangerous *721 condition posed by the step down. NCL responds that summary judgment is warranted because it lacked prior notice of the dangerous condition and therefore had no duty to warn Guevara of the step down. Guevara points to the warning sign alerting passengers to "watch your step" as evidence that NCL was on actual or constructive notice of the deceptive, and therefore dangerous, nature of the step down.
NCL contends that the mere presence of a warning sign does not automatically establish a cruise line's notice of a potentially dangerous condition. Specifically, NCL asserts that the warning sign at issue was installed by either the original owner or the builder of the Spirit , and there is no evidence as to why the sign was placed at that location or what specific condition, if any, it was affixed to address.
In analyzing whether the warning sign raises a genuine issue of material fact as to NCL's knowledge, we look to our recent decision in Sorrels . In Sorrels , a cruise ship passenger slipped and fell on the deck of a Norwegian ship, which was wet from rain. 796 F.3d at 1279. We held that the cruise ship employees' testimony-that the cruise line regularly placed warning signs advising passengers that the deck was "slippery when wet"-was enough to create a genuine issue of material fact regarding whether the cruise line had actual or constructive knowledge that the deck could be slippery after precipitation. Id. at 1288-89.
Not all warning signs will be evidence of notice; there must also be a connection between the warning and the danger. See, e.g. , Taiariol v. MSC Crociere S.A. , 677 F. App'x 599 (11th Cir. 2017). The district court cited Taiariol in support of its ruling against Guevara, but we find Taiariol favors Guevara. In Taiariol , the plaintiff slipped on the metal nosing of a step while leaving a theater on a cruise ship. Id. at 600. The plaintiff argued that the presence of a "watch your step" sticker affixed to the nosing of the step was evidence that the cruise line had notice of the nosing's slippery condition. Id. at 601. We disagreed, holding that "[c]ommon sense dictates that the sticker served to caution persons on the ship that the step was there; that is, it warned passengers that the surface was not flat . There is no evidence that it was intended to warn passengers that the nosing may be slippery." Id. at 602 (emphasis added).
In Taiariol , the plaintiff attempted to utilize the "watch your step" sticker as evidence of notice for a different purpose: that the stair's nosing was slippery. By contrast, Guevara argues that the "watch your step" warning sign means precisely what it says, and what this Court interpreted a similar warning to mean in Taiariol : "to caution persons on the ship that the step was there." Id. Contrary to the district court's application of Taiariol against Guevara, we find that the similarity of the signs establishes a sufficient connection between the warning and the danger-the step down.
NCL argues that Sorrels does not control here because the cruise line in that case was responsible for creating and placing the warning. But we see no significant distinction between a cruise line placing a warning sign and a cruise line having knowledge of a permanently affixed warning sign that has been present on its ship for years. A warning sign's primary function is to warn of dangers. Whether a cruise line places the warning sign itself or becomes aware of the warning sign after taking ownership is of little significance.[6] Both situations allow for an inference that *722 NCL had actual or constructive knowledge that the step down could be deceiving, and therefore dangerous, to cruise passengers. See Sorrels , 796 F.3d at 1288.
The district court noted that the language of the warning sign did not demonstrate notice of the dangerous condition posed by the step down because it only "generically advises passengers to 'hold the handrail' and 'watch your step' as they climb the three steps to the landing. It does not warn of a potential danger associated with the small step from the landing to the deck." At the summary judgment stage, however, we must view all evidence and factual inferences in favor of Guevara. See Stephens , 749 F.3d at 1321. Contrary to the district court's conclusion, NCL's corporate representative testified that the warning sign was intended to draw passengers' attention to the step down in the area at issue. A reasonable jury could conclude that the warning sign's language applies to the step down, particularly where, as here, the warning sign immediately precedes the very step at issue and expressly warns passengers to "watch your step." Guevara has thus raised a genuine issue of material fact regarding NCL's prior notice of the dangerous condition posed by the step down.
NCL contends that by holding that the warning sign here put it on notice of the dangerous condition, we are improperly transforming cruise ship operators into insurers of their passengers' safety. But NCL overstates the effect of our decision. We are merely holding that a cruise ship operator has notice of a condition-and thus a duty to warn-if a sign is posted on a ship warning about the condition. This decision does not mean that a cruise ship operator is automatically liable any time a passenger is injured in the area of the sign. After all, the cruise ship operator may be able to defeat the negligence claim by showing that it did not breach its duty to warn because the sign provided passengers with a sufficient warning about the dangerous condition in the area. In this case, NCL still may argue at trial that it is not liable because it fulfilled its duty to warn through the posted sign.[7]
Accordingly, we reverse and remand the district court's ruling regarding Guevara's failure to warn claim.
ii. Guevara's Negligent Maintenance Claim
Guevara argues that the district court erroneously granted summary judgment *723 based on its finding that he failed to present any evidence of NCL's negligent maintenance of the unilluminated lightbulb. Guevara asserts that he was not required to present evidence of negligent maintenance because NCL did not present any admissible evidence of its proper maintenance of the lightbulb. We disagree.
NCL may carry its burden of showing no genuine issue of material fact by showing "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Jeffery v. Sarasota White Sox, Inc. , 64 F.3d 590, 593 (11th Cir. 1995). In its motion for summary judgment, NCL argued that there was no evidence in the record establishing "a condition requiring maintenance or inspection of the subject deck or light fixtures, that [NCL] failed to maintain or inspect the subject deck or lighting fixtures, or that [NCL's] alleged failure to maintain or inspect the subject deck or lighting fixtures caused [Guevara's] injuries."
Guevara has failed to adduce evidence proving that NCL had actual or constructive notice that the subject lightbulb was out on the night that Guevara fell. Guevara does not point to any prior passenger complaints or reported issues about the ship's lighting that would alert NCL to any potential safety concern. See Cohen v. Carnival Corp. , 945 F.Supp.2d 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspections"); see also Klein v.Seven Seas Cruises S. DE R.L. , No. 16-21981, 2017 WL 3405531, at *4 (S.D. Fla. Aug. 7, 2017). Moreover, the record indicates that NCL retained four electrical engineers who were responsible for inspecting the lighting on the Spirit at 8:00 a.m. and 7:00 or 8:00 p.m. each day. Given these routine inspections,[8] and that Guevara cannot identify when the light went out, he has failed to make a sufficient showing that the dangerous condition was "present for a period of time so lengthy as to invite corrective measures." Keefe , 867 F.2d at 1322 (citing Monteleone , 838 F.2d at 65 ). Accordingly, the district court did not err in concluding that Guevara failed to create a triable issue of fact on whether NCL had notice of the allegedly dangerous condition posed by the unilluminated lightbulb.
IV. Conclusion
We affirm in part and reverse in part the district court's ruling granting summary judgment in favor of NCL. We affirm the district court's orders (1) striking Dr. Zollo's supplemental reports and (2) granting summary judgment on Guevara's negligent maintenance claim. But we reverse and vacate the grant of summary judgment on Guevara's failure to warn claim. We remand for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Guevara claims that the landing appeared flush with the brown deck area below the step.

Coefficient of friction measures a surface's "degree of slip resistance." Sorrels v. NCL (Bahamas) Ltd. , 796 F.3d 1275, 1279 (11th Cir. 2015) (citing Mihailovich v. Laatsch , 359 F.3d 892, 896, 921 n.2 (7th Cir. 2004) ).

Guevara conceded that NCL did not design, manufacture, construct, or install the step or decking materials. Guevara also conceded that there had been no prior injuries, accidents, or claims against NCL related to the step.

Federal Rule of Civil Procedure 30(d)(1) limits a deposition to one day of seven hours.

An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious. See Thomas v. NCL (Bahamas) Ltd. , 203 F.Supp.3d 1189, 1192 (S.D. Fla. 2016).

The district court heavily relied on its previous decision in Lipkin , in which it held that a warning label affixed to a moving walkway off of the vessel in the port of Miami was insufficient to establish Norwegian's notice because "the undisputed evidence shows that the walkway manufacturer, not Norwegian, affixed the warning labels, and that Miami-Dade County, not Norwegian, was responsible for maintenance of the walkway." 93 F.Supp.3d at 1322-23. We find Lipkin distinguishable on its facts, and therefore unpersuasive. In Lipkin , the warning in question was affixed to a moving walkway off of the vessel in the port of Miami. And it was Miami-Dade County, not Norwegian , who was responsible for maintaining the walkway. It is one thing to find that a cruise line cannot be responsible for a sign that is off of the vessel-it is another thing entirely to rule that a cruise line is not responsible for a sign that has been permanently affixed on the vessel for years. In further contrast to Lipkin , NCL itself was responsible for maintaining the deck area in the present case.

Guevara contends that he did not see the warning sign alerting him to the change in elevation because the bulb immediately above the sign was out. At trial, the factfinder can decide whether Guevara could see the sign at the time of his fall and, if Guevara could see the sign prior to falling, whether the warning was sufficient to satisfy NCL's duty to warn. See Outlaw v. Firestone Tire & Rubber , 770 F.2d 1012, 1014 (11th Cir. 1985) (holding that once a duty to warn is established, the adequacy of the warning is usually a question for the jury).

NCL's regular inspections weigh against a finding of constructive notice. See Monteleone , 838 F.2d at 66.