[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-13772
Non-Argument Calendar

————————————————

D.C. Docket No. 0:19-cv-61910-AHS

AMAURY IZQUIERDO,
MILADYS IZQUIERDO,

Plaintiffs - Appellants,

versus

CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO
POLICY NUMBER BB014330K-3830,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 29, 2021)

Before ROSENBAUM, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

After Hurricane Irma struck South Florida in September 2017, Amaury and Miladys Izquierdo filed a claim with their insurance company, Certain Underwriters at Lloyd's London Subscribing to Policy Number BB014330K-3830 ("Lloyds"), to recover insurance proceeds for damages to the roof of their home in Southwest Ranches.  The Izquierdos believed that they needed a new roof, but Lloyds determined that the hurricane damage was far less extensive and paid to repair or replace only 1.4% of the roof's concrete tiles.  The Izquierdos sued Lloyds for breach of contract in Florida state court.  After removal to federal court, the district court excluded the Izquierdos' expert witnesses due to inadequate disclosures and then granted summary judgment to Lloyds.  After careful review, we vacate and remand for further proceedings.

## I.

Amaury and Miladys Izquierdo own a home in South Florida that sustained damages to its roof during Hurricane Irma in September 2017.  Before the hurricane, Amaury testified, the home "did not have any roof leaks."  After the hurricane struck, though, the roof started to leak and water entered the interior of the home.  Amaury hired a water-mitigation company, which placed a tarp on the roof and performed water-extraction services in the home's interior.  He also called a public adjuster, Anthony Cordova, to report the loss to Lloyds.

2

Cordova inspected the property and then on October 25, 2017, prepared a detailed estimate of the damages, which included replacement of the entire roof. The total value of the claim, in Cordova's opinion, was $229,497.80. Amaury later hired M. Romero's Roofing & Inspections to perform unspecified "emergency repairs" to the roof on November 2, 2017, December 18, 2018, and June 8, 2020. Marcus Romero, Jr., also prepared an estimate of $109,300 to re-roof the Izquierdos' home.

Meanwhile, the Izquierdos filed a claim with Lloyds on October 4, 2017. Through a third-party administrator, Lloyds conducted an initial inspection with Cordova on November 22, 2017, and then retained an engineer to perform a more thorough investigation of the roof. According to a May 9, 2018, letter from Lloyds to the Izquierdos, the engineer found that elevated wind pressures and debris resulted in 24 fractured and 83 loose concrete roof tiles. But in the engineer's opinion, there were no "wind-created openings," and the moisture intrusion was the result of rainwater penetrating through preexisting openings. Citing policy exclusions for age-related wear and preexisting damages, Lloyds offered a settlement of $27,338.70 (less the deductible of $14,400) to address "the ensuing interior damages" and to repair or replace the fractured or loose tiles, which were "1.4% of the total roof area." But Lloyds refused to pay for a new roof.

## II.

3

The Izquierdos sued Lloyds in Florida state court in June 2019 alleging breach of the insurance contract. Invoking diversity jurisdiction, Lloyds removed the case to the U.S. District Court for the Southern District of Florida. The district court entered a scheduling order requiring the Izquierdos to disclose any experts, expert witness summaries, and reports as required by Fed. R. Civ. P. 26(a)(2) by March 20, 2020, among other deadlines. The Izquierdos did not meet that deadline.

In the meantime, the Izquierdos hired Serge Jean-Louis II from NCE, Inc., a self-identified "Structural Building Expert" with experience "determining the cause of loss for insurance claims," to inspect the roof. During an inspection in March or April 2020,[1] Jean-Louis "had no trouble concluding the origin of the damages," which he said was Hurricane Irma. He stated that his investigation revealed that "the Property's roof structure had no damage" before the hurricane, and that the damage he saw was consistent with "increased wind forces and wind driven rain from Hurricane Irma." Specifically, in his view, hurricane winds created openings in the roof, which allowed wind-driven water to enter the interior of the home. Jean-Louis also asserted that it was necessary to replace the entire roof because the "damage and collateral damage surpasses the 25% repair limit" under the Florida Building

---

[1] Jean-Louis's affidavit, as well as a portion of the preliminary report, identified the inspection date as March 18, 2020, but other aspects of the report indicate that the inspection occurred on April 18, 2020. Whether the inspection was in March or April is not material to our resolution of this appeal.

Code.  He prepared a "preliminary report" containing pictures of the roof and summarizing his findings and conclusions.  It appears that the Izquierdos gave Lloyds the preliminary report on June 8, 2020, before a mediation the next day.

Notably, the preliminary report appears to diverge from Jean-Louis's testimony regarding the purpose of the inspection.  In his affidavit, Jean-Louis stated that he was hired to provide an opinion "as to the need for and cost of repairing or replacing the damages to the Property's roof system."  Amaury likewise testified that he hired Jean-Louis "to provide a second opinion as to the need for and cost of replacement of the roofing system."  The preliminary report, in contrast, stated that "[t]he purpose of the inspection was to determine the cause of and extent of damages reported at the residence resulting from Hurricane Irma."  The report did not address the cost of repairing or replacing the damages to the roof.

On June 11, 2020, two days after an unsuccessful mediation, the Izquierdos filed a motion for relief from the scheduling order or for an extension of time to supplement its disclosures, or both.  Counsel explained that he inadvertently missed the expert-disclosure deadline because of a change in business operations in response to the COVID-19 pandemic.  The district court granted the motion by paperless order, extending the expert-disclosure deadline to June 12, 2020, but leaving all other deadlines intact.  That meant discovery was already closed, and dispositive motions were due by June 18, 2020.

5

On June 12, 2020, the Izquierdos disclosed the names of three experts and a short summary of their expected testimony "under Fed. R. Civ. P. 26(a)(2)(C)." First, according to the disclosure, Jean-Louis was "expected to testify as to the cause of the damages to the Plaintiffs' property based on his findings during his inspections." Second, Romero was "expected to testify as to his evaluation and inspection of the damages to the roof of Plaintiffs' property" and the "amount of the damages to repair same." And third, Cordova was "expected to testify as to the amount of the damages to the Plaintiffs' property based upon his inspection and use of estimating software." The Izquierdos noted that the reports from Cordova and Jean-Louis were previously provided to Lloyds on January 9, 2020, and June 8, 2020, respectively, and that the two reports and Romero's proposal were served along with the disclosure.

On June 18, 2020, Lloyds moved to strike the expert disclosures as untimely and inadequate, noting that the Izquierdos did not comply with the more rigorous disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). On July 9, 2020, the Izquierdos responded that their disclosures were timely under the court's extension order, that the disclosures were complete under Rule 26(a)(2)(C) because the experts were "hybrid" witnesses who would offer both fact and opinion testimony, and that exclusion was not warranted because any inadequacy in the disclosures was substantially justified or harmless. On that latter point, the Izquierdos made several

6

arguments: there was no surprise to Lloyds; Lloyds failed to seek to depose any witnesses; Lloyds would not be prejudiced because the missing information could easily be provided well before trial; the evidence was critical to their case; and they believed in good faith that the disclosures were adequate under Rule 26(a)(2)(C). In reply, Lloyds argued in part that the three experts could not plausibly be considered hybrid expert witnesses under Rule 26(a)(2)(C).

Meanwhile, Lloyds moved for summary judgment, arguing that the Izquierdos lacked admissible evidence of the extent of their claimed loss. In response, the Izquierdos contended that material facts were still in dispute, whether the expert witnesses were excluded or not. Lloyds replied that expert testimony was necessary to establish causation, and that, in any event, the Izquierdos' expert testimony was insufficient to establish a genuine issue of material fact.

On September 8, 2020, the district court entered an order granting Lloyds' motions to strike and for summary judgment. With regard to the motion to strike, the court first found that the expert disclosures were timely because it had extended the relevant deadline. But the court agreed with Lloyds that the disclosures were inadequate because the Izquierdos failed to provide all the information required by Rule 26(a)(2)(B). The court did not address the Izquierdos' argument that Rule 26(a)(2)(C)'s more lenient disclosure rules applied.

Turning to whether the violation of Rule 26 was substantially justified or harmless under Rule 37, the district court found that the Izquierdos "cannot satisfy the[] four factors" the Southern District considers in determining whether exclusion is warranted. Those factors included (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Although the Izquierdos addressed the substance of each of these factors in opposing the motion to strike, the district court did not recognize that. Rather, the court stated that they failed to "address *any* of these factors in their response brief, focusing, rather, on five different factors delineated in an unpublished order from the Northern District of Florida." And although the two sets of factors substantially overlapped with each other, the court criticized the Izquierdos for attempting to "apply different law." Finally, the court found the Izquierdos' proposed remedy of supplying the missing information unacceptable because "it should have been in their disclosure from the beginning," and permitting them to supplement now would "vitiate the entire scheduling order" because Lloyds "must be afforded the opportunity to depose the experts, file motions, and find rebuttal experts."

8

The district court therefore excluded the Izquierdos' proffered experts and, stating that expert testimony was required to establish causation, granted summary judgment in favor of Lloyds. The Izquierdos now appeal.

## III.

We review a district court's exclusion of an expert report for an abuse of discretion. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1360 (11th Cir. 2008). "We will find an abuse of discretion only when a decision is in clear error, the district court applied an incorrect legal standard or followed improper procedures, or when neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012).

Federal Rule of Civil Procedure 26 requires a party to disclose "the identity of any [expert] witness it may use at trial" and other information that varies depending on the expert. Fed. R. Civ. P. 26(a)(2)(A). A detailed written report is required "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Expert witnesses outside that category are "not required to provide a written report," and the disclosure must simply state the subject matter of the witness's expected testimony and "a summary

of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

If a party fails to properly disclose an expert witness under Rule 26(a), the party may not use the witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Factors relevant to the determination of whether exclusion of a witness is warranted include "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party if the witness had been allowed to testify." *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (cleaned up).

Here, we conclude that we are unable to exercise meaningful review based on the current record. First, the district court did not address the Izquierdos' argument that their disclosures were adequate because the witnesses were "hybrid" experts governed by the more lenient disclosure rules of Rule 26(a)(2)(C). Both parties can point to some support for their respective positions. And our review of this issue would benefit from the court's assessment and resolution of the parties' arguments on this issue.

Second, even if Rule 26(a)(2)(B) applied to some or all of the experts, such that the disclosures were inadequate, it appears the district court unreasonably disregarded the Izquierdos' arguments that the inadequacies were substantially justified or harmless. The court found that the Izquierdos failed to address the

10

relevant factors in their response to the motion to strike.  But the Izquierdos' response brief, despite relying on an out-of-district decision, addressed in substance each of the four factors cited in the court's opinion, even if the factors may have been worded slightly differently.  In particular, they addressed the importance of the testimony, their reasons for making disclosures under Rule 26(a)(2)(C) instead of Rule 26(a)(2)(B), and the prejudice to Lloyds.  In short, the Izquierdos' brief was sufficient to properly raise the issues for the court's consideration.

For these reasons, we conclude that "neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review." *Friends of the Everglades*, 678 F.3d at 1201.  Because the decision to exclude an expert witness is committed to the district court's discretion, we vacate the grant of summary judgment in favor of Lloyds and remand for further proceedings consistent with this opinion.  *See Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996) (remanding for the district court to exercise its discretionary judgment under the correct legal standard instead of deciding the issue on appeal). We leave open the possibility that the court may decide the expert-witness issues differently on remand, but we do not imply any view about whether it should.

**VACATED AND REMANDED.**